1107

Regan S. ROBERTS, Appellant-Respondent v. Richard B. ROBERTS, Respondent-Appellant.

(370 S. E. (2d) 881)

Court of Appeals

*Robert L. Hallman*, Columbia, *for appellant-respondent.*

*G. Robin Alley*, Columbia, *for respondent-appellant.*

Heard Jan. 19, 1988.

Decided March 14, 1988.

GARDNER, Judge:

Regan S. Roberts (the wife) brought this divorce action against Richard B. Roberts (the husband) seeking, *inter alia* (1) child support and custody of the children, and (2) equitable distribution of the marital estate. The appealed order, *inter alia*, (1) required the husband to pay one-half of all medical expenses not paid by the wife's insurance, (2) found 43.45 acres adjacent to the marital home to be non-marital property and (3) provided that if neither the wife nor husband purchased the marital home on the basis evaluated, that the home and 5 acres surrounding it (this was originally part of a 48.45 acre tract) be sold at public auction and the proceeds be divided equally between the parties. Both

parties appeal. We affirm in part, modify in part, reverse in part and remand.

The parties married on August 3, 1974 and three children, ages 10, 6 and 3 at the time of the hearing, were born of the marriage. The wife is a teacher and makes about $24,000.00 per year. The husband owns a construction business; in 1985 his business grossed in excess of $345,000.00; his financial declaration (dated June 30, 1986) shows a present net income of $14,772.00 per year; however, in 1985 he apparently had personal expenses of over $30,000.00 paid from his business account. A summary from the corporate checking account statements shows his business is obviously in a growing state.

The issues of merit are whether the trial judge erred by (1) requiring the husband to pay only one-half of the medical expenses of the children not covered by the wife's insurance and (2) excluding 43.45 acres of land from the marital estate.

The wife pays for the medical insurance for the children. We modify the appealed order's holding that the husband pay one-half of the excess medical bills for the children. We hold that the husband must pay the medical bills of the children in excess of the insurance the wife provides. And we so order.

Next, in addressing the issue of equitable distribution, the wife alleged that she had contributed to the acquisition of real property in the name of the husband; the husband denied this allegation.

Section 20-7-473, Code of Laws of South Carolina (Supp. 1987), in essence, provides that all property acquired by the parties during the marriage is marital property and then sets forth certain exceptions among which is property acquired by gift. We hold that under Section 20-7-473, the burden of proving that property acquired during the marriage was a gift to one of the parties is upon the party asserting a gift of property; that party has the burden of proving the exception, i.e., a gift of property.

In the case on hand, the wife offensively, during her case in chief, offered evidence, including extensive documentary evidence, to prove that property claimed by the husband to be a gift was in fact purchased by the

parties; this placed upon the husband not only the burden of proof, but also the burden of persuasion. *Martin v. Southern Railway Co.*, 240 S. C. 460, 126 S. E. (2d) 365 (1962); Fleming, *Burdens of Proof*, 47 Va. L. Rev. 275 (1961); Randall, *Evidence*, 16 S.C.L.R. 197, 203 *et seq.* (1963); Whaley, *Handbook on South Carolina Evidence*, 9 S.C.L.Q. Supp. (1957) at 155; 9 Wigmore, *Evidence* Sections 2485-2487 (Chadbourn rev. 1981); 29 Am. Jur. (2d) *Evidence* Section 123 (1967).

The husband acquired a deed from his mother conveying to him 148.45 acres. The parties built a house on the property. The appealed order held that the home and five acres of land on which it sits was part of the marital estate; the appealed order also held that the remaining 43.45 acres were not part of the marital estate by reason of their having been acquired by the husband by gift from his mother. Whether this 43.45 acre tract of land was, in fact, purchased by the parties is a major inquiry of this case.

It is undisputed that until about a year before the institution of this divorce, the wife gave her income to the husband or deposited her check in their joint banking account. The wife testified that she and the husband also had savings accounts.

The husband is an only child; the parties lived with the husband's mother for several years. The husband managed the affairs of his mother and at the time of the divorce, was paying from his personal funds $400 per month to a nursing home for her benefit. For 1980, 1981, 1982, and 1983 the joint tax returns of the parties reflect that the husband and wife furnished more than one-half of the support of the husband's mother; they claimed her as a double exemption on the tax returns.

The wife testified that before the parties were married, the husband took her to view the 48.45-acre tract of land; the husband then told the wife that his mother owned an interest in the land, as a cotenant and that he planned to purchase the tract.

The wife then testified that she and her husband planned to purchase the 48.45-acre tract, which was to be sold at a judicial auction and that in order to purchase the tract, the proceeds of the sale belonging to the husband's mother would be made available to the parties; the plan, according

to the wife's testimony, was to repay the husband's mother by monthly payments and by giving her the income tax refunds of the parties.

After describing the parties' plan, the wife introduced a judicial deed to the husband's mother of the 48.45 acres; this deed reflects that the property was struck down to the husband's mother at a judicial sale on January 5, 1976; the Master's deed to the husband's mother was dated March 2, 1976.

From the record we conclude that the actual sales price of the property, after credit for a forfeited bid, was $24,500.00 and that the husband's mother's interest in the sales proceeds was $11,745.68; there remained owing on the bid $12,754.32.

The wife then introduced checks payable to the husband totaling $12,621.07. Two of these checks dated January 27, 1976, amounting to $2,571.00, were from the South Carolina Teacher's Credit Union and, according to the wife's testimony, were loans made by the Credit Union to her. Three of the checks, dated January 28, 1976, were from savings and loan associations to the husband, and were, ostensibly, withdrawals from savings accounts.

The wife's testimony is that the $12,621.07 was used for the necessary cash amount of $12,754.32 needed by the husband's mother to effectuate the purchase of the 48.45 acre tract. To support this testimony by further documentary evidence, the wife introduced a machine copy of a deposit slip; the deposit slip was admittedly in the husband's handwriting. Listed on the back of the deposit slip were the above-referred to five checks totaling $12,621.07 payable to the husband. The deposit slip reflected an ostensible deposit in the First National Bank to an account in the name of the husband and his mother.

The trial judge sustained an objction by the husband to the introduction of the deposit slip. We reverse this ruling. The husband admitted that the deposit slip was in his handwriting; the date of the deposit slip was just before the Master's deed on March 2, 1976. With the foundation laid by the wife as to the parties' plan of purchase, this documentary evidence in the handwriting of the husband was admissible and we so hold.

The husband's mother conveyed the property to the husband by deed dated May 5, 1976. The property was titled in the husand when this action was instituted and therefore presumptively part of the marital estate. Section 20-7-473, *surpa.*

The wife then introduced a check for $150.00 to the husband's mother dated March 1, 1976, drawn on the joint account of the parties payable to the husband's mother with the notation "March 5 payment." The wife then introduced fourteen other similar checks drawn on the parties joint banking account and payable to the husband's mother; these additional checks totaled $2,850.00; one of these checks dated March 11, 1977, was for $850.00 with the notation "Oct., Nov., Dec., Jan., Feb. Loan Payments."

The wife's attorney, on cross examination of the husband, then introduced checks drawn on the parties' joint checking account payable to Standard Savings and Loan Association totaling $6,500.00; the checks reflected deposits in the Standard Savings and Loan Association; the husband's testimony is that these checks were probably deposited in his mother's savings account. We observe here, parenthetically, that the husband also testified that all of his mother's money was deposited to accounts in his and his mother's name; he admitted that some of those checks were deposited to his mother's savings account and acknowledged that he had no savings accounts of his own in the Standard Savings and Loan Association.

The wife then introduced the joint tax returns of the parties for the years 1980, 1981, 1982, 1983 and 1984 and testified that the refunds received totaled $10,197.00. The wife testified that these refunds were kept by the husband to be paid to his mother according to their plan and, further, on at least one occasion, the husband told her that a refund had to be paid to his mother and it could not be used for personal purposes. The wife testified that she received none of the funds from the tax refunds and it was her understanding that they all were paid to the husband's mother.

Mindful of the burden of proof and persuasion resting on the husband, we address the husband's testimony. As to the documentary evidence presented by the wife, the husband testified (1) that he could not recall whether he deposited

the $12,621.07 to his mother's savings accounts; (2) that he did not remember the $3,000.00 in monthly checks drawn by him on the parties' joint banking account payable to his mother and which had notations to the effect that they were loan payments for specific months; (3) that some of the checks written by him and totaling $6,500.00 and drawn on the joint account of the parties and payable to the Standard Savings and Loan Association were probably deposited to his mother's account; and did not remember whether the remaining checks were deposited to his mother's savings accounts; (4) that he handled the parties' finances and, furthermore, failed to dispute the wife's testimony that the $10,197.00 in tax refunds were given to his mother.

The general rule is that the burden of evidence is imposed on the party best able to sustain it; so the party having peculiar knowledge of the facts or control of evidence, relating to an issue, has the burden of evidence as to it. *Martin v. Southern Railway Co., supra; Smith v. Ashmore,* 184 S. C. 316, 192 S. E. 565 (1937).

In the case before us, the husband admittedly handled all of the parties' banking business; he had available to him all records pertaining to the various checks and deposits of the parties; his mother was available to him to testify either by deposition or at trial as to whether she was paid for the property. If, in fact, there was any explanation for the testimony and documentary evidence of the wife that she and the husband purchased the 48.45 acres, the husband had access to the evidence; he failed to dispute any of the documentary evidence and therefore failed to meet the burdens of proof and persuasion imposed upon him. And we so hold.

We conclude that the preponderance of the evidence establishes that the parties purchased the entire 48.45 acres. We therefore hold that the trial judge erred in holding that 43.45 acres of the land was the husband's by virtue of gift. We therefore reverse the appealed order to hold that the 48.45 acres were in their entirety part of the marital estate.

Because we hold that the entire 48.45 acres is part of the marital estate, we hold that the marital estate might possibly be divided in kind as requested by the wife in her pleadings and therefore reverse the appealed order's provi-

sion pertaining to a public sale and remand for a determination by the trial court of the issue of how to best effectuate the 50-50 division of the marital estate.

We find no merit to the remaining questions presented by the wife and husband.

For the reasons stated, we affirm in part, modify in part, reverse in part and remand.

Affirmed in part, modified in part, reversed in part and remanded.

SANDERS, C. J., and BELL, J., concur.