1793

Sammie H. PEIRSON, formerly Sammie H. Calhoun, Appellant v. Orville Gilbert CALHOUN, Respondent.

(417 S.E. (2d) 604)

Court of Appeals

*D. Denby Davenport, Jr.* of *Davenport & Yacobi, P.A.*, Greenville, *for appellant.*

*Kenneth C. Porter* of *Porter & Rosenfeld, P.A.*, Greenville, *for respondent.*

Heard Feb. 18, 1992.

Decided March 30, 1992.

CURETON, Judge:

In this domestic action the wife appeals from the trial court's refusal to award her attorney fees, the award of fees to the husband's expert witness, and numerous issues involving the division of the marital assets. We affirm in part, reverse in part, and remand.

The parties were married in 1958. The wife is 57 years old; the husband is 64 years old; both are in good health. The wife has a B.A. degree; the husband has a law degree. The wife was employed prior to the marriage, but quit to become a full-time housewife. The husband was employed before the marriage and is currently employed with a prestigious law firm in Greenville.

The parties had four children; all are now emancipated. The wife was the primary caretaker of the children and the household, although at times she had the assistance of a maid.

In 1980, the wife left the marital home and moved to the parties' vacation home in North Carolina. She took the parties' two unemancipated children with her. An emancipated child remained with the husband, attending technical school and college.

From May 1980 to July 1984, the wife lived in the vacation home. The husband paid child support and virtually all of the wife's living expenses. In July 1984, the wife purchased a home in North Carolina from non-marital funds. From 1984 until the parties' divorce in 1988, the wife worked full-time.

In January 1988, the wife obtained a divorce in North Carolina on the ground of one year's continuous separation. The North Carolina decree did not divide the marital property. The wife remarried about one month later and now lives in South Carolina with her present husband. The wife commenced the present action in January 1989.

The wife asserts error in the trial court's findings that (1) there was no marital misconduct on the part of the husband that affected the economic circumstances of the parties or con-

tributed to the breakup of the marriage; (2) her departure from the marital home was without cause and adversely affected the economic circumstances of the parties; (3) she should receive only 25 percent of the marital estate; (4) contributions made to the husband's 401K plan after April 30, 1980, should not be included in the marital estate; (5) debts incurred by the husband after the 1980 separation should be considered marital debts; (6) certain wedding gifts should be included in the marital estate; (7) she should receive three lots adjacent to the marital home as part of her share in the equitable distribution; (8) her non-marital property exceeded the husband's non-marital property; (9) she was not entitled to attorney fees; and (10) she should pay the husband's expert witness fee. We address the wife's alleged errors seriatim.

The wife bitterly complains of the trial court's finding the husband was not guilty of marital misconduct that "affected the economic circumstances of the parties or contributed to the breakup of the marriage." Conversely, she complains the evidence does not support the court's finding that her departure from the marital residence "result[ed] in increased utility costs, home maintenance, and general household expenses."

The wife testified the husband drank heavily both before and after she left the marital home and his drinking was the cause of the breakup of the marriage. The husband never denied the wife's testimony about the nature of his drinking or the problems it caused in the marriage. He stated only that it had nothing to do with the divorce because he stopped drinking six to eight months before the divorce. He also argues his drinking never affected the parties economically. Our review of the record convinces us the husband's drinking was the reason the wife left the marital home and impacted on the breakup of the marriage. We hold the wife was justified in leaving the marital home. The economic impact of the wife's decision to leave is not very clear in the record. The trial court found the separation resulted in increased utility costs, home maintenance, and general household expenses which it ascribed to the conduct of the wife. Because we hold the husband's conduct caused the separation, it necessarily follows these increased expenses must be attributed to the husband. The court's order completely discounted the fault of the husband in dividing the marital prop-

erty. We remand for the court to consider what effect, if any, the husband's fault had on the breakup of the marriage and the economic circumstances of the parties. *Noll v. Noll*, 297 S.C. 190, 375 S.E. (2d) 338 (Ct. App. 1988) (fault is a factor for the court to consider in equitably dividing marital property although it does not justify a severe penalty). The consideration of fault should be limited to its impact on the economic circumstances of the parties during the marriage. *Smith v. Smith*, 294 S.C. 194, 363 S.E. (2d) 404 (Ct. App. 1987).

The wife argues that because the parties approached their marriage a s a partnership, the court should have awarded her a greater portion of the marital estate. She testified:

> Well since neither one of us were [sic] from Greenville, we felt that my time might be best spent making friends in the community. He was an associate with a prestigious law firm making social contacts. And to uphold him and make our name in the community, I became involved in clubs and organizations, fund raisers. We felt that—he was almost 30. We were looking forward to rearing a family. And but, of course, I had some income from my deceased father's trust. It was enough to help us over the rough spots. So maybe my time would be better spent not working.

The husband never disputed the wife's testimony. It is clear the wife provided the vast majority of the indirect contributions to the marriage enterprise. Her direct contributions included property and money inherited from her parents. She also worked during the marriage from time to time.

The husband's evidence concerning the contributions of the parties came primarily from his expert economist. The economist's calculations reflect that during the period 1958-1987, the husband made direct contributions of $1,698,508 while the wife made direct contributions of $164,962. As to indirect contributions, the expert showed figures of $48,091 for the husband and $295,743 for the wife. Using these raw figures, he concluded the wife contributed 16.8 percent and the husband 83.2 percent to the accumulation of the marital estate. The trial court awarded the wife 25 percent of the marital properties. The wife's primary argument on appeal is it is unfair to award her only a 25 percent interest given the par-

ties' approach to their marriage. She submits she is entitled to a 50 percent interest relying on the equal partnership theory. She also objects to the use of the minimum wage in valuing her indirect contributions. Additionally, she makes a series of attacks on the calculations made by the husband's expert.

We agree it is debasing to the wife to value her homemaker services at the minimum wage. We would note, however, the court also valued the husband's indirect contributions at minimum wage. Further, the husband's expert testified that even at twice the minimum wage, the wife's indirect and direct contributions would still only equal 22 percent of the total contributions to the marital estate. Finally, the wife presented no evidence of the value of her indirect contributions. We agree with the wife the trial court failed to address her equal partnership theory in dividing the property. Under such a theory, where the parties agree the husband would be the income producer and the wife would be a homemaker and companion and give up her career, such an arrangement may be considered to be an equal partnership of the spouses. *See Johnson v. Johnson,* 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988), *cert. denied,* 298 S.C. 117, 378 S.E. (2d) 445 (1989). The major problem with the approach taken by the trial judge is it fails to take into account the value of the wife's foregone career opportunities. *See Woodside v. Woodside,* 290 S.C. 366, 350 S.E. (2d) 407 (Ct. App. 1986). In spite of the failure of the trial court to consider the equal partnership or foregone career opportunities theories, no exception properly preserves these arguments for appellate review. *Connolly v. People's Life Ins. Co. of S.C.,* 299 S.C. 348, 384 S.E. (2d) 738 (1989). The wife's exception is too general to permit review on these theories.[1]

In view of the failure of the wife to present evidence of the value of her indirect services and because no exceptions address equal partnership and foregone career opportunities theories, we reluctantly affirm the award of 25 percent interest to the wife subject to such enhancements as the court shall

---

[1] Her exception reads: "The trial judge committed error by awarding to the [wife] only approximately 25% interest in the marital assets; the error being that such award is an abuse of discretion in that it is wholly inadequate and contrary to statutory and case law guidelines."

see fit to order on remand because of the matters discussed herein.

The wife next challenges both the court's date for identifying the marital component of the husband's 401K Plan and the method used for dividing the plan. The trial court excluded all of the husband's contributions to the plan made after the parties separated in May 1980. He offered no explanation and cited no authority for this treatment of the plan. All other marital property was identified and valued as of January 1988 and there has been no appeal from that holding.[2] We, therefore, remand with instructions to value the plan as of the date of the parties' divorce and to include all contributions made by the husband into the plan after the separation up until the date of valuation.

The next issue presented by the wife is whether the court erred in finding certain debts incurred by the husband after the separation of the parties were marital debts. The wife argues these debts were incurred solely by the husband and did not benefit her. We first note the wife did not present evidence on the use of the loan proceeds except to say she did not receive any of the monies directly. As of December 31, 1987, there was a total marital debt of $107,500. It consisted of approximately $76,000 in mortgages on the marital and vacation homes and unsecured notes accounted for the balance. The husband testified that in 1984 he obtained a second mortgage on the marital home to secure a $40,000 loan. He used this money to pay off existing unsecured notes, most of which existed prior to the parties' separation. In 1987, the husband obtained another mortgage to secure a loan in an undisclosed amount. The proceeds were used to pay off the 1984 loan. He does not relate to the court whether there were remaining proceeds from this loan, and if so, what happened to them. In September 1987, the husband borrowed $9,000 to pay bills and income taxes. This unsecured loan exists today. The husband also borrowed another $20,000 in 1986 or 1987 to pay income

---

[2] Section 20-7-473 requires identification and valuation of the marital estate as of the date of "filing or commencement of marital litigation." In this case, that date would be January 27, 1989. However, the trial court found the date for valuation in this case was January 1988. No appeal has been taken from that finding and, thus, it is the law of the case.

taxes.[3] Finally, there is a 1978 demand note for $5,000 that remains unpaid. The trial court ordered the husband to be responsible for the debts, but deducted the debts from the gross estate.

While it is proper to consider marital debts in making an equitable distribution of marital assets, it is also incumbent upon the court to ensure the debts were incurred for the benefit of both parties during the marriage. *Allen v. Allen*, 287 S.C. 501, 339 S.E. (2d) 872 (Ct. App. 1986); see also S.C. Code Ann. § 20-7-472 (Supp. 1991). The husband testified generally that all loan proceeds were spent for family purposes. His testimony was not contradicted by the wife. In view of the uncontradicted testimony of the husband as to the use of these loans, we affirm the trial judge's treatment thereof.

The wife next claims the silver flatware and silver service were wedding gifts given her as her sole and separate property by her family and should not have been included in the marital estate. We disagree. The only evidence in the record is that the silver, or at least some of it, was a wedding gift from the wife's mother and sister. There is no evidence of when the wife actually received the silver or the donative intent of the donors. Absent evidence to the contrary, we presume these were ordinary wedding gifts to both parties received contemporaneously with their marriage. We hold there is insufficient evidence here to apply the "English Rule" on antenuptial wedding gifts adopted in *Pappas v. Pappas*, 300 S.C. 62, 386 S.E. (2d) 301 (Ct. App. 1989). We affirm the order of the trial court which included the silverware in the marital estate.

We now discuss the issue of the propriety of the court's order requiring the marital residence's acreage to be subdivided into four parcels with three of the parcels to be conveyed to the wife as part of her interest in the marital property. The parties stipulated to an appraisal report on the marital home. In considering the highest and best use of the property, the report concluded the land surrounding the marital home should be subdivided and three new lots carved

---

[3] The husband testified he was "caught short" due to a dramatic decrease in earnings.

from the acreage. The trial judge agreed the division was necessary to achieve the highest and best use of the land. The wife argues neither party requested the division and the trial court's failure to specify the size of the lots renders the division "problematic and argumentative as to what property should be surveyed." The husband responds to the wife's argument by stating the family court has the power to apportion property in the most equitable manner and the wife in her complaint prays for a partition and sale of such properties as cannot be partitioned in kind.

Family court judges are given broad jurisdiction in equitably dividing marital property. They may use any reasonable means to divide the estate equitably and their judgment will not be disturbed on appeal absent an abuse of discretion. *Coxe v. Coxe*, 294 S.C. 291, 363 S.E. (2d) 906 (Ct. App. 1987). We hold the court did not abuse its discretion in ordering a subdivision of the marital home acreage. However, it is clear from a review of the property drawing that metes and bounds are not set out. Without such information, this aspect of the order is ripe for disagreement. Therefore, we remand this issue for reconsideration. On remand, the trial court should first determine whether or not the subdivision may be avoided altogether by awarding other property to the wife. Should the court determine it is necessary to award the lots to the wife, it should specify in detail the metes and bounds of the lots and ensure also that there are no problems from a zoning and governmental compliance standpoint.

The wife claims error in the court's finding relative to which of the parties owned more non-marital property.

We first note the court did not find the wife owned more non-marital property than the husband. Rather, it found the "value of the wife's remaining inherited property far exceeds the value of the husband's remaining inherited property." We think the evidence reasonably supports this finding. Assuming, however, the court was in error we see no prejudice. There is no indication the trial court relied on the disparity in the ownership of non-marital property to justify the wife's award. An error not shown to be prejudicial does not afford a basis for reversal. *Sturkie v. Sifly*, 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984). We affirm on this issue.

The wife sought to recover attorney fees of $19,000, costs,

and suit money. The trial judge denied her request finding both parties incurred substantial fees and each had sufficient funds to pay their attorneys. The wife's exceptions claim error in that she has limited resources and does not have sufficient funds to pay her attorney. Her exceptions also assert the denial of attorney fees deviates from the guidelines established by case law and is unsupported by the record.

The record shows the wife has more available cash than the husband. She admitted to having $24,000 in certificates of deposit and a money market account from her remaining inherited property. Ordinarily, the award or denial of attorney fees is discretionary with the trial judge. *Wood v. Wood,* 298 S.C. 30, 378 S.E. (2d) 59 (Ct. App. 1989). The factors to consider in awarding attorney fees are set out in *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E. (2d) 313 (1991). Were we not to remand this case, we would be constrained to hold the trial judge did not abuse his discretion in disallowing the wife's request for attorney fees. However, because certain factors, especially the beneficial results, may change on remand we also remand attorney fees for reconsideration.

Finally, the wife asserts error in the court's holding that she should pay a fee of $400 to the husband's expert witness. We affirm. The wife twice deposed the husband's expert. The expert submitted a bill but the wife refused to pay it stating the husband was responsible for the bill. The court found the bill reasonable and ordered the wife to pay it. The wife's exception fails to specify error stating only the trial judge "abused his discretion." Absent a proper exception, the issue is not before us on appeal. *Connolly v. People's Life Ins. Co. of S.C.,* 299 S.C. 348, 384 S.E. (2d) 738 (1989). Moreover, the court had authority to order payment of the fee under Rule 26(b)(4)(C), SCRCP.

Affirmed in part, reversed in part, and remanded in part.

GARDNER and BELL, JJ., concur.