1912

Peggy Alexander McCLERIN, Respondent v.
Richard Leon McCLERIN, Appellant.

(425 S.E. (2d) 476)

Court of Appeals

*James W. Tucker, Jr.,* Rock Hill, *for appellant.*

*Keith A. Gatlin* and *Michael L. Brown, Jr., Gatlin, Brown and Godbold,* Rock Hill, *for respondent.*

Heard Oct. 14, 1992; Decided Dec. 7, 1992.

Reh. Den. Jan. 7, 1993.

BAROODY, Acting Judge:

This is a domestic action instituted by respondent-wife, Peggy Alexander McClerin, against appellant-husband, Richard Leon McClerin. From an order of the Family Court, the husband appeals the equitable distribution of certain marital property and the award of attorney's fees and costs to the wife. We affirm in part and remand in part.

The parties were married on August 15, 1980 and separated in September of 1988. There were no children born of the marriage. Around 1977, the husband, a chemist, lost his job when the company he worked for was sold. Shortly thereafter, the husband formed R-M Industries, a custom manufacturer of specialty chemicals. The wife testified as to her extensive involvement in the inception of this business and her continual and extensive work for the company both before and after the marriage. The husband admitted to the wife's involvement but disputed her contributions to the growth of the business. The record shows the business became very profitable and the parties achieved a high standard of living.

The trial judge found the increase in the value of the R-M Industries stock owned by the parties was marital property and found the parties entitled to a 50/50 split of all marital property. He valued the increase in stock in question at $1,645,698. He further found the wife's wedding ring to be nonmarital property and found a marital asset of approximately $71,000 derived from an agreement with a French corporation. Finally, he valued a country club membership at $12,000, ordered the husband to pay $32,500 in attorney's fees and costs, and awarded each party alternating use of four Charlotte Hornets basketball season tickets. The husband appeals these aspects of the trial judge's orders.

The husband first asserts the trial judge erred in finding the increase in the value of the R-M Industries stock to be marital property. He argues the wife failed to present evidence demonstrating her contributions to an increase in the value of the stock. We disagree.

S.C. Code Ann. § 20-7-473 (Supp. 1991) provides in pertinent part:

> The term "marital property" as used in this article means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation . . . except the following, which constitute nonmarital property:
>
> \* \* \* \* \*
>
> (5) any increase in value in nonmarital property, *except to the extent that the increase resulted directly or indirectly from efforts of the other spouse during marriage.* (Emphasis added.)

Although this court has jurisdiction in equity matters to find facts based on our own view of the preponderance of the evidence, we are not required to disregard the findings of the trial judge who is in a better position to judge the demeanor and veracity of the witnesses. *Allen v. Allen,* 287 S.C. 501, 339 S.E. (2d) 872 (Ct. App. 1986).

The trial judge found that, through joint efforts, the parties built the company into a profitable business. In particular, he noted various direct and indirect contributions of the wife. He found the wife was with the husband at the inception of the company, she worked side by side with the husband building it to its present state, she held the position of Comptroller General and ran the administrative aspects of the business and, although in the latter years of the marriage she opened a separate company, she continued to work after hours and on weekends for R-M Industries and performed services for R-M Industries while working at the other company. Additionally, he found the wife and husband entertained clients of R-M Industries in a social and home setting devoting a substantial amount of their marriage, both social and working, to making the company into the profitable

state it is in now. Finally, he noted that the wife performed a majority of the homemaker duties with the exception of what was performed by the maid. The record before us contains more than ample evidence to support these findings.

The husband next contends the trial judge erred in accepting the valuation placed on the company stock by the wife's expert. He asserts various inaccuracies with the expert's valuation and therefore argues acceptance of this valuation was inappropriate. We disagree.

The trial judge ruled as follows on this issue:

> I find the value of the shares at the time of the commencement of marital litigation to be $1,840,698.00. This represents shares of 9,716 in the [husband's] name and shares of 815 in the [wife's] name. The [husband] brought assets worth $195,000.00 into the marriage, a majority of which were owned through R-M Industries. I find this to be non-marital property and set this figure off against the value of the stock. I therefore find the increase in value of the stock to be $1,645,698.00. In achieving this value, *I specifically find that there is only one valuation before me.* That valuation was presented by Randy Whitt, whom the parties stipulated to be an expert. Mr. Whitt is a certified public accountant. I find the value he reached to be credible. I also note that it was reached by standard accounting procedures. A Taiwanese corporation recently paid $1,000,000.00 for one-third ownership of the company. Mr. Whitt valued R-M Industries in totality as of May 2, 1989 at $2,999,000.00. Based on the parties' ownership in the corporation, and deducting the $195,000 [husband] brought into the marriage, I find the increase in the value of the stock to be $1,645,698.00. (Emphasis added.)

While the husband presented an expert in this area, his testimony consisted of his difference in opinion as to how the wife's expert applied various methods of valuing the business. The husband himself did not present any alternative valuation and his expert witness admitted that he did not make any valuation of the business and all he really did was critique the report of the wife's expert. After a thorough review of the record, we find no error on the part of the trial judge in accepting the valuation of the wife's expert. The husband cannot

sit back at trial without offering proof and then complain of the insufficiency of the evidence on appeal. *Honea v. Honea*, 292 S.C. 456, 357 S.E. (2d) 191 (Ct. App. 1987).

The husband also asserts the trial judge erred in finding the wife's wedding ring to be nonmarital. We disagree. Although the husband testified the wife received the ring at the wedding ceremony, the wife denied this stating it was an engagement ring given to her by the husband six months before the wedding. The trial judge found there was a conflict in testimony on this matter and found the wife's testimony to be more credible. Because antenuptial gifts are acquired before the marriage, they are not marital property within the meaning of § 20-7-473. *Pappas v. Pappas*, 300 S.C. 62, 386 S.E. (2d) 301 (Ct. App. 1989). Accordingly, we find no error on the part of the trial judge in finding the ring was nonmarital.

The husband asserts the trial judge erred in valuing the country club membership at $12,000. He argues no evidence was presented to indicate a $12,000 value and that it was worth nothing because he could not realize any value from the membership. We disagree. The wife testified the country club membership had a value of $12,000 as that was the current initiation fee. The husband presented no evidence on its value, arguing that it had no value because it was nontransferable. The record shows the membership was in the name of both the husband and the wife. As noted by the trial judge, if one of the parties dropped the membership and then wanted it back, it would cost $12,000 to rejoin. We therefore find no error in the valuation of the country club membership.

The husband also contends the trial judge erred in awarding the wife attorney's fees and costs in the amount of $32,500. We disagree. In awarding attorney's fees and costs, the trial judge should consider the nature, extent and difficulty of the services rendered, the time necessarily devoted to the case, the professional standing of counsel, contingency of compensation, beneficial results obtained, and the customary legal fees for similar legal services. *Donahue v. Donahue*, 299 S.C. 353, 384 S.E. (2d) 741 (1989). Contingency of compensation and beneficial results obtained are to be considered in determining whether an award should be made and, in making this determination, the trial judge

should consider the abilities of the parties to pay, their respective financial conditions, and the effect of the attorney's fees on each party's standard of living. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991). An award of attorney's fees and costs is a discretionary matter not to be overturned absent an abuse by the trial judge. *Donahue*, 384 S.E. (2d) at 748. After a thorough review of the record before us and a careful consideration of the above factors, especially the complexity of the case and the favorable results achieved for the wife, we find no abuse of discretion in the $32,500 award.

The husband also contends the trial judge erred in ▆▆▆ awarding each party alternating use of the four Charlotte Hornets tickets instead of awarding both parties two tickets for each game. We disagree. The trial judge found, and the record supports, it is "quite obvious" the parties should not be seated next to each other at the games. The court may use any reasonable means to divide the marital estate. *O'Neill v. O'Neill*, 293 S.C. 112, 359 S.E. (2d) 68 (Ct. App. 1987). We therefore find no error in this award.

Finally, the husband contends the trial judge erred in finding a marital asset of approximately $71,000 derived from a French corporation and distributing it as such. The record shows numerous references to this money; however, it is unclear whether this money was in existence at the time of commencement of marital litigation on May 2, 1989. The wife testified a chemical concern in France paid R-M Industries approximately $1.7 million for a customer list and noncompete agreement. She stated "we" received approximately $912,000 with around $600,000 put into loans in R-M Industries and $300,000 put into a certificate of deposit to cover any tax liability. She stated they were left with approximately $75,000 after a $235,000 tax liability of which she received $5,029 and the husband received $69,969. She also testified, however, the husband put the $69,969 back into R-M Industries. The husband agreed that approximately $912,000 was received from which a $300,000 certificate of deposit was purchased to cover the estimated tax liability. He stated after paying the taxes and setting aside a $10,000 contingency fund for additional taxes, there was $64,994 remaining of which the wife received $5,029.13 and he received $59,964.87. He further testified he may have received this money in April of 1989 but he did not

remember. He claimed a portion of the $10,000 set aside was used to satisfy their 1988 personal taxes.

In his oral ruling from the bench, the trial judge stated, ■ "Any excess of the sale to the French connection (sic) has not been tracked down and I am disregarding that." Yet, in his written order, he found excess proceeds after taxes derived from the French corporation in the amount of $71,316 to be martial property and found the husband had already spent $66,286.87 of this amount which he considered as part of the equitable distribution to the husband.

From the record before us, we are unable to determine whether these excess proceeds existed at the time of marital litigation and in what form. The wife's testimony indicates she kept her $5,029 while the husband put the funds he received into R-M Industries. However, it is unclear whether he put this money back into the corporation before or after the May 2, 1989 marital litigation date and whether he received a note, more stock, or nothing for this contribution to the company. Given the trial judge's apparent confusion on this issue as evidenced by his oral ruling and the lack of evidence to support his contrary written ruling, we remand this issue for reconsideration with leave to take additional testimony on this matter if necessary. The estate is to be adjusted accordingly.

Affirmed in part and remanded in part.

BELL and CURETON, JJ., concur.