501 S.E.2d 735

**Orville G. CALHOUN, Respondent/Appellant,**

v.

**Sally G. CALHOUN, Appellant/Respondent.**

No. 2793.

Court of Appeals of South Carolina.

Heard Dec. 3, 1997.

Decided Feb. 17, 1998.

Refiled May 26, 1998.

158

Sally G. Calhoun, Greenville, appellant/respondent pro se.

Stuart G. Anderson, Jr., Greenville for respondent/appellant.

### ORDER

PER CURIAM:

After reviewing the Petitions for Rehearing in this case, it is ordered that the opinion heretofore filed, Opinion No. 2793, filed February 17, 1998, be withdrawn and the attached opinion be substituted. The Petitions for Rehearing are denied.

**AND IT IS SO ORDERED.**

/s/ <u>Jasper M. Cureton</u>, J.
For the Court

CURETON, Judge:

In this domestic action, both the husband and the wife appeal several aspects of the family court's order. The issues on appeal relate to equitable apportionment, alimony, the statutory ground for divorce, and attorney fees and costs. We affirm as modified.

### *Facts*

Orville and Sally Calhoun married, each for the second time, in December 1989. At the time of marriage, the husband was 62 and the wife was 44. Both parties are lawyers. The husband was a senior partner in a Greenville law firm and the wife maintained a solo practice. Although the parties shared the same educational background and profession, the difference in their incomes was significant. The husband earned an annual income of $132,477,[1] while the wife earned $38,455.

Prior to the marriage, the parties acquired substantial real and personal properties. The husband owned two homes. His Greenville home became the parties' marital residence and the other home, located in North Carolina, was used as a vacation home. The wife also owned a home and continued to

---

1. Under the husband's Partnership Retirement Plan, he can no longer practice law and his annual income from his retirement plan is approximately $28,181.

use this home as an office during the marriage. Each residence contained significant household furnishings. In addition, both parties had individual retirement accounts to which they each made contributions.

Within the first year of marriage, the parties experienced serious marital difficulties. According to the wife, the ongoing litigation from the husband's first marriage, his constant use of alcohol and failure to provide financial support caused continuous quarreling between them. While on vacation in North Carolina in 1994, the wife left the husband and returned to her premarital home. Three weeks later, she returned to the marital home attempting to reunite with the husband, but he did not desire reconciliation.

In July 1994, the husband commenced suit seeking an order of separate maintenance, exclusive use of the marital home, and a mutual restraining order. The wife counterclaimed seeking, among other things, an order of reconciliation, or in the alternative, a divorce on the ground of habitual drunkenness, equitable distribution, alimony, attorney fees and costs, and the maintenance of health and dental coverages.

A temporary order issued on September 20, 1994 granted all relief sought by the husband. The court granted the wife's request for pendente lite payment by the husband of her health and dental insurance and uninsured medical expenses, but reserved for later disposition the wife's request for additional pendente lite alimony and suit money.

The family court's final order: (1) granted the husband a divorce on the ground of one year's continuous separation; (2) denied the wife's plea for alimony; (3) divided the parties' personal property by ordering the husband to pay the wife $11,586 in addition to an in kind distribution of the property; (4) awarded each party 60% of the marital portion of their own retirement plan and 40% of the other's retirement plan resulting in an order that the husband roll over $28,152.20 to the wife's retirement account; and (5) awarded the wife $10,000 in attorney fees. Both parties appeal.

### Scope of Review

This court has jurisdiction, in domestic matters, to find the facts in accordance with our view of the preponder-

ance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 414 S.E.2d 157 (1992). This scope of review, however, does not require us to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981). Neither are we required to ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981).

## *Law/Analysis*

### I. Alimony and Attorney Fees

#### A. Pendente Lite

■ The first issue concerns the wife's request for pendente lite alimony and attorney fees. She argues the family court erred in denying her request because she made a prima facie showing for divorce on the ground of habitual drunkenness and, in addition, showed she was without sufficient funds to defend the suit or maintain herself during the pendency of this action. The wife further argues the family court erred in refusing to hold a hearing on her subsequent plea for pendente lite alimony and suit money due to changed circumstances.

In support of her plea for pendente lite alimony and suit money, the wife submitted her affidavit which described the husband's escalating use of alcohol after the marriage. Four affidavits of family and non-family members supported the wife's claim of the husband's habitual use of alcohol and contentious nature.

At the temporary hearing, the wife also submitted a financial statement which reflected a monthly income of $1,806 as compared to the husband's financial declaration which reflected a monthly income of $8,687. According to the wife's financial declaration, her living expenses while separated from the husband resulted in a monthly deficit of $2,000. The wife also submitted attorney fee affidavits indicating she had incurred $1,188.91 in attorney fees and costs from July to August 1994, and an additional $1,628 by September 1994.

■ In its temporary order, the family court held in abeyance the wife's request for pendente lite alimony and suit money pending a final hearing in this matter. The court,

however, granted the wife's request for payment of her medical and dental insurance and uninsured medical expenses. On the wife's motion to reconsider, the family court refused to hold a hearing on the issue finding the matter had already been decided.

South Carolina Code Ann. §§ 20–3–120 (1985) and 20–3–140 (Supp.1997) provide for the allowance of alimony and suit money pendente lite under proper circumstances in accordance with the principles controlling such allowance in actions for divorce a *vinculo matrimonii.*

Pursuant to these provisions, our Supreme Court has issued several opinions holding the test for the allowance of pendente lite alimony and suit money is that the party seeking relief must establish a prima facie case. *Cannarella v. Cannarella,* 275 S.C. 516, 273 S.E.2d 529 (1980); *Poliakoff v. Poliakoff,* 221 S.C. 391, 70 S.E.2d 625 (1952); *Knight v. Knight,* 211 S.C. 25, 43 S.E.2d 610 (1947). In view of the law and evidence presented, we find the wife made a showing sufficient to entitle her to alimony and suit money pendente lite. *Cannarella,* 275 S.C. 516, 273 S.E.2d 529.

We believe the family court committed error in concluding it could not revisit the issue of alimony and suit money pendente lite in connection with the wife's renewed plea based on changed circumstances. *Armaly v. Armaly,* 274 S.C. 560, 266 S.E.2d 68 (1980) (holding the family court has continuing authority in the area of pendente lite relief to, on petition of either party, increase or reduce the award as circumstances might require).

■ Although we conclude the family court erred procedurally, we find a reversal for such an error is not mandated in view of the fact that the court required the husband to pay substantial medical expenses as temporary support. Moreover, we find the wife has failed to show any prejudice resulting from the court's error as she was able to maintain herself and defend the divorce proceeding. *See Armstrong v. Armstrong,* 185 S.C. 518, 194 S.E. 640 (1938) (finding the principal objective of temporary alimony is to give the spouse seeking support sufficient means for her support and enable her to prosecute or defend her suit).

### B. Permanent

#### 1. Attorney Fees

The wife next raises two arguments concerning attorney fees. She argues the family court abused its discretion in: (1) denying her any attorney fees for the time she represented herself *pro se*, (2) awarding attorney fees in an amount less than she incurred, and (3) denying her costs and expert witness fees.

■ South Carolina Code Ann. § 20-3-130(H) (Supp.1997) authorizes the family court to order payment of attorney fees to either party. The award of attorney fees and costs is a matter within the sound discretion of the trial judge. The award will not be reversed on appeal absent an abuse of discretion. *Donahue v. Donahue*, 299 S.C. 353, 384 S.E.2d 741 (1989). Our courts have outlined, on numerous occasions, the factors to be considered in an award of attorney fees. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991); *Donahue v. Donahue*, 299 S.C. 353, 384 S.E.2d 741 (1989); *McClerin v. McClerin*, 310 S.C. 99, 425 S.E.2d 476 (Ct.App. 1992).

■ Neither the South Carolina Legislature nor the South Carolina Supreme Court has expressly authorized an attorney proceeding *pro se* to recover attorney fees for his or her own efforts. Federal courts are divided on the question of whether a *pro se* attorney litigant is entitled to an award of attorney fees.[2] Some state courts, however, that have considered the question have refused to grant attorney fees to *pro se* litigants, albeit for different reasons.[3]

---

**2.** *See generally,* Vincent M. Waldman, Note, *Pro Se Can You Sue? Attorney Fees for Pro Se Litigants,* 34 Stan.L.Rev. 659, 666–669 (1982); *e.g., Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980) (finding an award to a defending *pro se* attorney litigant was proper because the award furthers the underlying policy of discouraging frivolous or harassing litigation brought under 42 U .S.C. §§ 1983 and 1985 (1988)); *cf. White v. Arlen Realty & Dev. Corp.,* 614 F.2d 387 (4th Cir.), *cert. denied,* 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (holding self-representation does not serve the goals of the Truth in Lending Act and thus, a litigant not represented by an attorney may not be awarded attorney fees).

**3.** *See Connor v. Cal–Az Properties,* 137 Ariz. 53, 668 P.2d 896 (Ct.App. 1983) (concluding the presence of an attorney-client relationship is a

One rationale of the cases denying attorney fees to *pro se* attorney litigants is that an award authorized by statute presupposes an obligation by one person to reimburse another person who has provided legal representation. S.C.Code Ann. § 20–3–130(H) states that "[t]he court may order one party to pay a reasonable amount to the other for attorney fees incurred in maintaining an action for divorce." In our view, the cardinal criterion for an award under § 20–3–130(H) is that the party claiming a right to a fee has paid or owes another person money for legal services rendered.

At trial, the wife submitted her own attorney fee affidavit which reflected 120.4 hours of work in defending this action and $5,763 in costs. She also submitted the affidavit of her retained counsel, indicating she had incurred retained counsel fees in the amount of $11,000.

The argument presented to us is whether an exception to the reasoning, stated above, should apply in this case, because the time and effort devoted to this action by the wife diverted the time that she could otherwise have utilized in income-producing activity. Although this argument is persuasive, we decline to make an exception.

In deciding this novel issue, we align ourselves with those states which deny attorney fees to *pro se* attorney litigants. An attorney who appears on his or her behalf does not incur an obligation to pay attorney fees. This court believes the rule denying such an award is the better view. On this basis, we find no abuse of discretion in denying *pro se* attorney fees to the wife.

On review of the record, we agree with the family court's decision to award $10,000 in attorney fees for the wife's retained counsel. *Glasscock*, 304 S.C. 158, 403 S.E.2d 313. However, we believe the family court abused its discretion in

prerequisite to the recovery of attorney fees); *Swanson & Setzke, Chtd. v. Henning*, 116 Idaho 199, 774 P.2d 909 (Ct.App.1989) (holding an attorney fee award to a self-representing law firm would contravene the public policy of promoting fairness in the legal system); *Rosenbaum v. Rosenbaum*, 38 Ill.App.3d 1, 349 N.E.2d 73 (1976) (finding the legislature did not expressly authorize attorney fees under its fee-award statute); *Moss v. Bonnell*, 186 W.Va. 301, 412 S.E.2d 495 (1991) (finding a statutory requirement that the litigant actually be charged a fee by an attorney).

requiring each party to bear his or her own costs. The wife incurred fees for an appraiser, accountant, and psychologist. In this arduous case, we find the wife was ultimately successful on several issues concerning the equitable apportionment of marital property. Thus, we award the wife her costs and expert fees in the amount of $5,763.

### 2. Alimony

The wife argues the family court erred in denying her permanent alimony in light of the relevant statutory factors for such an award.

■ When deciding whether to award alimony, the court must consider the current and reasonably anticipated earnings of both spouses in addition to the twelve factors set out in S.C.Code Ann. § 20–3–130(C) (Supp.1997). *See Morehouse v. Morehouse*, 317 S.C. 222, 452 S.E.2d 632 (Ct.App.1994).

■ In weighing the relevant factors, the family court found the husband's retirement income was substantially less than his pre-retirement earnings. The court concluded the income was conditioned upon and subject to a non-competition clause and that benefits would cease after age 75. The court also stated that although the wife "did not have to work to full capacity during the marriage, she has the ability to build up her practice" and support herself.

After a review of the record, we affirm the family court's denial of alimony. We find the court gave appropriate weight to the factors relevant to a determination of an award of alimony. *See Williamson v. Williamson*, 311 S.C. 47, 426 S.E.2d 758 (1993); *Brandi v. Brandi*, 302 S.C. 353, 396 S.E.2d 124 (Ct.App.1990) (finding an alimony award should not serve as a disincentive for a spouse to make reasonable efforts to improve her employment potential or provide, to the extent possible, for her own support).

### II. Habitual Drunkenness

■ According to the wife, the marriage failed due to the husband's excessive drinking. The wife argues she proved by a preponderance of the evidence that the husband's conduct primarily caused the dissolution of the marriage. We disagree.

In order to prove habitual drunkenness, there must be a showing that the abuse of alcohol or drugs caused the breakdown of the marriage and that such abuse existed at or near the time of filing for divorce. S.C.Code Ann. § 20–3–10 (1985); *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994); *Fisher v. Fisher,* 276 S.C. 375, 278 S.E.2d 780 (1981).

At trial, the wife presented testimony, including her own, her children's and non-family members, that the husband drank heavily during the marriage and became belligerent towards her when he drank. Although the husband denied he had a drinking problem or was ever intoxicated, one of his witnesses refuted his testimony that he confined his drinking to two or three glasses of wine at mealtimes.

The family court found that based on the evidence, the husband's conduct did not rise to the level necessary to sustain a finding of divorce on the ground of habitual drunkenness. In its order, the court specifically noted that no allegations of alcohol abuse were included in a pre-separation letter written by the wife to the husband concerning changes in his conduct which would improve the marriage.

Giving the trial court the benefit of all determinations concerning the credibility of witnesses, we find the record supports the findings of the family court. *Berry v. Berry,* 290 S.C. 351, 350 S.E.2d 398 (Ct.App.1986).

### III. Equitable Apportionment

#### A. Valuation of Marital Home

##### 1. Wife's Appeal

The wife argues the family court erred in the valuation of the marital home as of the date of marriage because it improperly included three lots valued at $45,000 which were granted to the husband's former wife in his prior divorce. We agree.

It is well settled that in making an equitable distribution of marital property, the family court must, among other things: (1) identify the marital property, real and personal, to be divided between the parties; (2) determine the fair market value of the property so identified; (3) identify the proportionate contributions, both direct and indirect, of each party to the

acquisition of the marital property; and (4) provide for an equitable division of the marital property. *Noll v. Noll,* 297 S.C. 190, 375 S.E.2d 338 (Ct.App.1988); *Johnson v. Johnson,* 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988); *Toler v. Toler,* 292 S.C. 374, 356 S.E.2d 429 (Ct.App.1987); *see also* S.C.Code Ann. § 20–7–472 (Supp.1997).

The family court found that the actual value of the marital home at the time of the marriage was $235,512 and the fair market value of the property at the time of filing was $275,-000. Based on these findings, the court found the marital home appreciated in value by $39,488 during the marriage.

With respect to the time of marriage valuation, the court used a stipulated appraisal from the husband's prior divorce.[4] In *Peirson,* an expert appraised the house in February, 1989 at $227,000. The stipulated value, however, included three lots valued at $45,000 which were awarded to the former wife.[5]

As to the time of filing valuation, the court utilized the estimate of the wife's expert. According to this expert, the marital home was worth $275,000 in July 1994. The court also accepted the expert's testimony that the home appreciated 4 to 5% from the date of the appraisal in the prior divorce until the time of marriage in the instant case (February to December 1989).

The court applied a 4.5% appreciation rate[6] to the $227,000 appraisal and determined the time of marriage valuation was $235,512. As to the difference between the time of marriage and time of filing valuation, the court found the appreciation of the marital home was $39,488.

In reviewing the record, we find the time of marriage valuation erroneous. The approach taken by the family court under the circumstances is inequitable. Although the husband

---

4. *Peirson v. Calhoun,* 308 S.C. 246, 417 S.E.2d 604 (Ct.App.1992).

5. In *Peirson,* the former wife appealed the in kind distribution of the three lots awarded her. Although this court remanded the issue for reconsideration, the husband and former wife settled the issue before the family court ruled. As a result of the settlement, the husband transferred the three lots to his former wife in 1992.

6. The court actually amortized the 4.5% annual appreciation over a ten month period (February to December 1989).

held legal title to the three lots at the time of marriage, the former wife held an equitable interest in the lots because she had been awarded them. The fact that the husband and former wife on remand settled her entitlement to the lots by agreement did not serve to nullify the fact that the lots were transferred to the former wife to satisfy a judgment, which this court had approved in principle.

We find the three lots valued at $45,000 should have been deducted from the $227,000 appraisal. Discounting this amount, we find the value of the marital home was $182,000 at the time of appraisal. By adding the 4.5% appreciation[7] to the $182,000, a date of marriage valuation of $188,825 is rendered.

Additionally, the wife argues the increase in equity due to the reduction of the first mortgage indebtedness on the marital home should have been included in the marital estate because the mortgage was reduced with marital earnings.

▇▇▇ The increase in the value of a nonmarital asset resulting from the use of marital funds to reduce indebtedness on the asset constitutes marital property subject to equitable division. *Johnson*, 296 S.C. 289, 372 S.E.2d 107.

▇▇▇ In its final order, the family court gave no reason why it excluded the increase in the equity due to the reduction in mortgage of the marital home. The court, however, apportioned the debt to the husband.

In October 1992, the husband executed a second mortgage on the marital home in the amount of $130,000. As a result of this action, the indebtedness on the marital home substantially increased. The mortgage indebtedness on the date of marriage was $62,310, but the indebtedness on the date of filing was $148,717. The wife argues the second mortgage should be disregarded because the husband used the proceeds from that loan for nonmarital purposes.

Inasmuch as the second mortgage of $130,000 was executed during the marriage and in part to satisfy a debt from the husband's previous marriage, we decline to find any portion of

---

7. In an effort to be consistent, we also adjusted the 4.5% appreciation by the ten months intervening between the date of the appraisal and the date of marriage in the instant action.

appreciation of the marital home attributable to the reduction in the first mortgage debt, subject to equitable distribution. Although the husband spent part of the proceeds from the second mortgage on his adult children, we refuse to be an auditing agency for the parties. *Panhorst v. Panhorst,* 301 S.C. 100, 390 S.E.2d 376 (Ct.App.1990).

We recognize our reduction in the date of marriage valuation increases the marital appreciation of the home by $46,687. We therefore conclude the wife is entitled to her 50% special equity of this increase or $23,343.50. The family court order is modified accordingly.

### 2. Husband's Appeal

■ The husband argues the family court erred in awarding the wife a 50% special equity in the increased value of the marital home. Specifically, he argues the wife's physical and financial efforts constituted maintenance and repair of the marital home, rather than permanent improvements, and thus an award of a 50% special equity was unreasonable. We disagree.

■ Under the Equitable Apportionment of Marital Property Act (the Act), S.C.Code Ann. §§ 20–7–471 through 20–7–479 (Supp.1997), a spouse shall acquire, based upon certain factors set out in § 20–7–472, a vested special equity in property acquired during the marriage. A spouse has an equitable interest in improvements to property to which he or she contributed, even if the property is nonmarital. *Johnson v. Johnson,* 296 S.C. 289, 372 S.E.2d 107; *Webber v. Webber,* 285 S.C. 425, 330 S.E.2d 79 (Ct.App.1985).

In making the equitable distribution award, the family court reasoned that the wife's direct contributions to the marital home entitled her to a special equity of 50% in the appreciated value of this property. The court considered the fact that the wife expended substantial time and money refurnishing, decorating, and repairing the home.

Here, the record indicates that the wife performed much of the work herself and utilized earnings from her law practice to pay for work she did not perform. Further, the appraiser testified that the "curb appeal" of a home can greatly enhance its value. We concur with the findings of the family court and

find no error in its decision to award the wife a 50% special equity in the marital home. S.C.Code Ann. § 20–7–471 (Supp. 1997); *See also Webber,* 285 S.C. 425, 330 S.E.2d 79.

### B. Valuation of Vacation Home

 Based upon the same argument made in respect to the marital residence, the wife argues the family court erred in its valuation of the market appreciation of the vacation home. Specifically, she argues the court incorrectly determined the date of marriage valuation in reliance on documentation from the husband's previous litigation. She further argues the court erred in excluding the market appreciation in this home from the marital estate.[8]

South Carolina Code Ann. § 20–7–473(5) (Supp.1997) provides that any increase in the value of nonmarital property during the marriage is nonmarital property, except to the extent the increase resulted directly or indirectly from efforts of the other spouse during marriage. *See also Miller v. Miller,* 293 S.C. 69, 358 S.E.2d 710 (1987).

In valuing the mountain home as of the date of marriage, the family court found the home was worth $74,588 in January 1988 per *Peirson,* 308 S.C. 246, 417 S.E.2d 604, to which it added a 2% per year increase due solely to inflation for two years. Using the 2% increase, the court determined the date of marriage valuation was $77,570. The court applied the same 2% annual inflationary rate for the four year period in which the parties were married. Thus, the court concluded the date of filing valuation was $84,000.

At trial, a real estate appraiser testified for the wife that the fair market value of the vacation home on the date of filing was $86,000. Using this appraisal, the court found the difference in the appreciation of the vacation home due to inflation and its actual value amounted to $2,000. Accordingly, the court concluded that only $2000 of the increase in the home's value was attributable to factors other than inflation.

---

8. Additionally, the wife argues the Beech Mountain home was transmuted to marital property. On appeal, she only asks that the market appreciation of the mountain home be included in the marital estate. Therefore, we find the wife has limited this issue on appeal. Rule 207(b)(1)(B), SCACR.

As we have discussed above, a spouse has an equitable interest in appreciation of property to which she directly or indirectly contributed during the marriage, even if the property is nonmarital. S.C.Code Ann. § 20–7–473(5). The family court refused to include the marital appreciation of the vacation home in the marital estate finding the wife did nothing to improve the property and thus, a special equity was not warranted. We find no error in this determination inasmuch as the wife has failed to show that the increase was due, in any part, to her efforts. *Roberts v. Roberts,* 296 S.C. 93, 370 S.E.2d 881 (Ct.App.1988), *aff'd as modified,* 299 S.C. 315, 384 S.E.2d 719 (1989) (the spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital estate).

The wife also argues the mortgage on the Beech Mountain vacation home was also reduced with marital earnings. Despite the family court's finding that this home was nonmarital property, the wife argues the appreciation in the equity of the property due to reduction of debt was subject to equitable distribution.

As we view the record, the vacation home had an outstanding mortgage of $16,543 on the date of marriage which was reduced by $6,416 with marital earnings.

Applying *Johnson* to the facts, here, we find the increase in equity on the mountain home due to the mortgage reduction should have been included in the marital estate. *Johnson,* 296 S.C. 289, 372 S.E.2d 107.

### C. Valuation of Retirement Plans

#### 1. Wife's Appeal

In addition to the husband's 401–K plan, he has a second retirement plan provided by his law firm which pays him $20,000 per year plus a cost of living increase.[9] The wife claims error in the exclusion of the husband's retirement plan from the marital estate because the firm funded the plan during the marriage.

---

**9.** As of July 1994, the retirement payment adjusted for a cost of living increase was approximately $28,181.

The family court excluded the husband's partnership retirement plan from the marital estate based on its findings that: (1) the sums are fixed, without regard for years of service or income earned during or before the marriage; (2) the husband would receive nothing if he died before retirement; (3) the husband contributed nothing to the plan during coverture; and (4) the husband had foregone three year's benefits under the plan by continuing to work after he could have voluntarily retired. Our review of the record reveals that the wife failed to present evidence of the value of the plan at the time of marriage and the time of filing. Moreover, the wife's own expert could not discern the value of the retirement plan and the coverture portion of that value. Accordingly, we affirm the trial court on this issue.

## 2. Husband's Appeal

During the marriage, the wife invested in an annuity which was worth $3,777 on the date of filing. The husband argues the value of this annuity was improperly excluded from the marital portion of the wife's retirement accounts. We agree.

"Marital property" is generally defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation...." *See* S.C.Code Ann. § 20–7–473 (Supp.1997).

In the final Order of Divorce, the family court redesignated the marital portion of the wife's retirement plan previously valued at $28,078.82. The court adopted the method proposed by the wife to separate the premarital and marital increase in the plan and found the marital portion of her retirement plan increased in value by $21,667.33 The court, however, failed to include any portion of the wife's annuity in the marital estate.

We find no basis in the record to distinguish the marital portion of the annuity from the marital portion of the wife's retirement plan. Because it appears to us the family court inadvertently failed to include the value of the annuity in the marital estate, we modify the appealed order to include $3,777 in the marital portion of the wife's retirement account.

### D. Wife's Office Furnishings

As mentioned, the wife used her premarital residence as a law office. During the marriage, she purchased furnishings, including a bookcase, desk, leather chairs, and other items which cost $6,932 with marital earnings. The husband insists these furnishings are marital property.

Our review of the record and financial declarations establishes the wife acquired these furnishings between February 1992 and August 1993. We note the wife does not deny she purchased the contested property with marital funds, but argues it would be unfair to deem the furniture marital property as she has not made a similar claim against the husband's law office assets.[10]

We find the family court's determination, as to this issue, is unsupported by the record. Accordingly, the appealed order holding the office furnishings in the wife's possession nonmarital property is modified to include the value of these items in the marital estate.

### E. Valuation of Personal Property

In our prior opinion, we affirmed the family court's finding that the "husband should pay to the [wife] $11,586 to maintain the 50–50 split in the personal property." The family court found that "the personal property each has in their respective possession is almost equal." In his petition for rehearing, the husband has called to our attention the wife's statement, in her brief, that "[she] agrees that a payment of $5,697 from the husband to the wife would reflect the 50–50 split." While the record indicates that certain assets which were included in the family court's evaluation of personal property were duplicated on the parties' asset addendum, it is not clear to us from the record which assets must be excluded to arrive at the computation of $5,697. Inasmuch as the wife concedes this argument, we modify our prior opinion to reflect this calculation.

### F. Post Judgment Interest

In the wife's petition for rehearing, she seeks an award of post judgment interest. Our opinion affirmed the

---

**10.** The office furnishings were owned by a separate corporation and the husband's interest in that corporation was neither established nor proven to be a marital asset at trial. The wife's claim has no merit.

family court's order which denied the wife's request. The family court's September 21, 1995 order of divorce gave the husband ninety days to pay the wife $19,744 for her interest in the marital home. By order dated January 4, 1996, the family court increased the equitable distribution award to the wife and granted the husband an additional ninety days to pay the wife.

"A motion to alter or amend a final judgment brought pursuant to Rule 59(e), SCRCP, must be served within ten days of receipt of written notice of entry of the order." *Green v. Green*, 320 S.C. 347, 350, 465 S.E.2d 130, 132 (Ct.App.1995).

In her answer and counterclaim, the wife failed to plead post judgment interest. By order filed September 21, 1995, the family court, among other things, granted the wife an equitable distribution award. On October 10, 1995, the wife filed a Rule 59(e), SCRCP, motion for reconsideration of the family court's order. Although the wife's motion for reconsideration was granted in part by order dated January 9, 1996, she again failed to include this request in her motion for reconsideration. On January 31, 1996, the wife filed a second motion for reconsideration requesting post judgment interest for her equitable distribution award. By order dated February 5, 1996, the family court denied the wife's motion.

We agree with the husband that the wife's motion for reconsideration was untimely because it was not served within ten days of either the September 21, 1995 order or the January 4, 1996 order. Rule 59(e), SCRCP. Thus, she may not complain of the failure of the trial court to award post-judgment interest. *Smith v. Smith*, 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997) (finding husband waived argument that court should have considered share loans as marital debt during equitable distribution by failing to timely raise issue before trial judge).

### Conclusion

In accordance with our findings, we conclude the husband is entitled to 40% of the wife's annuity valued at $3,777 and 50% of the office furniture valued at $6,932. Thus, we find the husband is entitled to a credit of $4,976.80. This figure is to

be deducted from the amount of $5,697 which he has been ordered to pay to the wife.

As previously determined, we find the date of marriage valuation on the marital home improperly included three lots which were awarded to the husband's former wife. The effect of our finding necessarily increases the amount of appreciated value in the marital home. Accordingly, we modify the order to include an additional $46,687 and give the wife a 50% special equity in this amount or $23,343.50. We also find the wife is entitled to a portion of the appreciation which resulted from the reduction of indebtedness on the vacation home. Thus, the order is hereby modified to give the wife 50% of the $6,416 or $3,208. In addition, we find the wife is entitled to recover expert fees and costs. We modify the order and allow her an award of $5,763 for expert fees and costs.

In summation, we deny the petitions for rehearing but modify our prior opinion to reflect the disposition of certain matters raised by the parties. The family court's order is modified to include the portion of appreciation in the marital and vacation homes, the personal property adjustment, and an award of expert fees and costs. As a result, we find the additional amount due the wife is $33,034.70 and order the husband to pay this amount within 90 days.

As indicated above, we do not reach the merits of the wife's claim for post judgment interest dating from the September 21, 1995 order. We, however, make no suggestion whether the wife is entitled to post judgment interest on the equitable distribution award.

We affirm in full all of the remaining provisions of the family court order as pertains to the equitable distribution award. As to the remaining issues argued by both parties, we find them to be without merit and affirm pursuant to Rule 220(b), SCACR.

While we recognize that some issues could have been remanded for reconsideration by the family court, we note the parties requested that all issues be resolved by this court.

The order of the family court is,

**AFFIRMED AS MODIFIED.**

HOWELL, C.J., and HOWARD, J., concur.