529 S.E.2d 14

**Orville G. CALHOUN, Respondent,**

v.

**Sally G. CALHOUN, Petitioner.**

No. 25079.

Supreme Court of South Carolina.

Heard Feb. 2, 2000.
Decided March 6, 2000.

Sally G. Calhoun, of Beaufort, pro se.

Stuart G. Anderson, Jr., of Anderson, Fayssoux and Chasteen, of Greenville, for respondent.

TOAL, Acting Chief Justice:

This Court granted certiorari to review the Court of Appeals' opinion in *Calhoun v. Calhoun*, 331 S.C. 157, 501 S.E.2d 735 (Ct.App.1998). We affirm in part and reverse in part.

### FACTS

In this domestic action, the family court (1) granted respondent a divorce on the ground of one year's continuous separation; (2) denied petitioner's plea for alimony; (3) divided the parties' personal property by ordering respondent to pay petitioner $11,586, in addition to an in-kind distribution of the property; (4) awarded each party 60% of the marital portion of their own retirement plan and 40% of the other's retirement plan resulting in an order that respondent roll over $28,152.20 to petitioner's retirement account; and (5) awarded petitioner $10,000 in attorney fees for retained counsel, but denied her request for attorney fees for the time she represented herself. Both parties appealed.

The Court of Appeals affirmed, as modified, finding: (1) respondent was entitled to a credit of $4,976.80 on the amount owed petitioner for personal property; (2) the appreciated value of the marital home was $46,687 more than stated in the family court order and petitioner was entitled to a 50% special equity in that amount; (3) petitioner was entitled to 50% of the $6,416 appreciation on the vacation home resulting from the reduction in the mortgage on the home; and (4) petitioner

was entitled to recover expert fees and costs in the amount of $5,763. The Court of Appeals affirmed the remaining provisions of the family court order pertaining to the equitable distribution award and, pursuant to Rule 220(b)(2), SCACR, found the remaining issues argued by the parties to be without merit. *Id.*

Petitioner sought a writ of certiorari following the denial of her petition for rehearing. We granted certiorari to review the following issues: (1) whether petitioner, an attorney, is entitled to attorney fees for the time she represented herself; (2) whether she is entitled to post-judgment interest on the equitable distribution award; and (3) whether the Court of Appeals erred in refusing to consider her transmutation argument with regard to respondent's vacation home.

## DISCUSSION

### 1.

■ South Carolina Code Ann. § 20–3–130(H) (Supp.1999) states that in divorce proceedings, the court, after considering the financial resources and marital fault of both parties, may order one party to pay a reasonable amount to the other for attorney fees *incurred*, including sums for services rendered and costs incurred before the commencement of the proceedings and after entry of judgment, *pendente lite* and permanently. At trial, petitioner, an attorney, sought attorney fees for the time she represented herself.[1] She submitted an affidavit which indicated she spent 120.4 hours defending this action. The family court denied petitioner's request for attorney fees without comment.

On appeal, the Court of Appeals acknowledged that whether a *pro se* litigant who is an attorney should be allowed to

---

1. Petitioner also sought $11,000 in attorney's fees for retained counsel and $5,763 in costs. The family court awarded her $10,000 for retained counsel's fees, but required each party to bear his or her own costs. The Court of Appeals affirmed the award of attorney's fees, but found the family court abused its discretion in denying petitioner's request for costs. Finding that petitioner incurred fees for an appraiser, accountant, and psychologist and that she was ultimately successful on several issues concerning the equitable apportionment of the marital property, the Court of Appeals awarded petitioner her costs and expert fees.

recover attorney fees is a novel issue in this state and that there is a split of authority on the issue in jurisdictions where it has been addressed. A majority of those states have allowed *pro se* attorney litigants to recover attorney fees,[2] while the minority rule denies such relief.[3] The Court of Appeals aligned itself with those states which deny attorney fees to *pro se* attorney litigants. In doing so, the Court of Appeals held that the cardinal criterion for an award of attorney fees under § 20–3–130(H) is that the party claiming a right to a fee has paid or owes another person money for legal services rendered and that an attorney who appears on his or her behalf does not incur such an obligation. Petitioner maintains this holding is erroneous.

We agree with the Court of Appeals' adoption of the minority rule. The term "incur" is commonly defined as "to become liable or subject to." THE AMERICAN HERITAGE DICTIONARY 653 (2d Ed.1982); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1146 (1976). A *pro se* litigant, whether an attorney or layperson, does not become liable for or subject to fees charged by an attorney. Accordingly, we hold that *pro se* litigants are not entitled to attorney fees under § 20–3–130(H).

### 2.

■ The family court's September 21, 1995, order of divorce gave respondent ninety days to pay petitioner $19,744

---

2. *See Burrell v. Hanger*, 650 P.2d 386 (Alaska 1982); *Arkansas Blue Cross and Blue Shield, Inc. v. Doe*, 22 Ark.App. 89, 733 S.W.2d 429 (1987); *Zick v. Krob*, 872 P.2d 1290 (Colo.App.1993); *Quick & Reilly, Inc. v. Perlin*, 411 So.2d 978 (Fla.App.1982); *Harkleroad v. Stringer*, 231 Ga.App. 464, 499 S.E.2d 379 (1998); *Ziobron v. Crawford*, 667 N.E.2d 202 (Ind.App.1996); *Wells v. Whinery*, 34 Mich.App. 626, 192 N.W.2d 81 (1971); *Winer v. Jonal Corp.*, 169 Mont. 247, 545 P.2d 1094 (1976); *Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co. of Ohio, Inc.*, 115 N.M. 152, 848 P.2d 1079 (1993); *Rutherford v. Semenza*, 142 Misc. 531, 254 N.Y.S. 876 (1932); *Weaver v. Laub*, 574 P.2d 609 (Okla.1978); *Leen v. Demopolis*, 62 Wash.App. 473, 815 P.2d 269 (1991).

3. *See Connor v. Cal–Az Properties, Inc.*, 137 Ariz. 53, 668 P.2d 896 (Ariz.App. 1983); *Trope v. Katz*, 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259 (1995); *Swanson & Setzke, Chtd. v. Henning*, 116 Idaho 199, 774 P.2d 909 (Idaho App. 1989); *Garrett v. Peirce*, 74 Ill.App. 225 (1898); *Golden v. Riverside Apartments, Inc.*, 488 So.2d 478 (La.App. 1986); *Smith v. Batchelor*, 832 P.2d 467 (Utah 1992).

for her interest in the marital home and to roll over $13,505.20 from his retirement account into petitioner's retirement fund. Both parties filed motions for reconsideration pursuant to Rule 59(e), SCRCP.

By order dated January 4, 1996, the family court reduced the amount it had ordered respondent to pay petitioner to $11,586, representing a miscalculation in the previous equitable distribution of marital property, and increased the amount respondent was to roll over into petitioner's retirement fund to $28,152.20. The family court granted respondent ninety days to pay petitioner. Both parties again filed Rule 59(e) motions. The motions were denied.

Petitioner did not seek post-judgment interest in her answer and counterclaim or in her first Rule 59(e) motion. Instead, the first time she requested post-judgment interest was in her second Rule 59(e) motion filed on January 31, 1996. Therein, petitioner requested post-judgment interest on "all money awards except [petitioner's] award of her share of [respondent's] 401-k...." [4]

On appeal, petitioner asked the Court of Appeals to award her post-judgment interest. The Court of Appeals found that petitioner's January 31, 1996, motion for reconsideration was untimely because it was not served within ten days of either the September 21, 1995, order or the January 4, 1996, order; therefore, she could not complain about the failure of the family court to award post-judgment interest.

Petitioner maintains she is automatically entitled to interest on the money judgment without regard to whether the Rule 59(e) motion in which she first requested post-judgment interest was timely. We agree.

South Carolina Code Ann. § 34–31–20(B) (1987) states that money decrees and judgments of courts enrolled or entered shall draw interest at a rate of 14% per annum. This Court has held that an equitable distribution award is a money

---

4. Pursuant to *Hunt v. Hunt*, 311 S.C. 355, 428 S.E.2d 899 (Ct.App. 1993), petitioner also sought earnings on the share of respondent's 401–k plan awarded to her by the family court from the date of the original judgment. Petitioner did not raise that issue on appeal nor does she raise it to this Court. Petitioner is seeking post-judgment interest on the money judgment only.

decree or judgment, pursuant to § 34–31–20, so that it accrues interest at the statutorily prescribed interest rate from the date of the judgment. *Casey v. Casey,* 311 S.C. 243, 428 S.E.2d 714 (1993).

Where the law allows interest as a matter of course, it is unnecessary to make demand for it in the pleadings. *Anderson v. Citizens Bank,* 294 S.C. 387, 365 S.E.2d 26 (Ct.App.1987); see also 47 C.J.S. *Interest & Usury* § 81 (1982) ("[W]here interest is payable by virtue of statute or rule of court and not by virtue of contract, it is not necessary to make a specific claim for interest in the declaration or complaint."). While pre-judgment interest must be pled in order to be recovered, except in cases involving an agreement to pay a sum certain, this Court has recognized that a claimant is entitled to interest from the date of the rendition of the verdict, or post-judgment interest, as a matter of course. *See Van Dolson v. Earles,* 234 S.C. 593, 109 S.E.2d 456 (1959); *see also Town of Bennettsville v. Bledsoe,* 226 S.C. 214, 84 S.E.2d 554 (1954); *Rawls v. American Central Ins. Co.,* 97 S.C. 189, 81 S.E. 505 (1914); *Sims v. Goudelock,* 41 S.C.L. (7 Rich. 23) 9 (1853); *Anderson v. Citizens Bank, supra.*

Indeed, § 34–31–20(B) states that money decrees and judgments of courts enrolled or entered *shall* draw interest at a rate of 14% per annum. Use of the word "shall" in a statutory provision indicates the provision is mandatory. *Seckinger v. The Vessel Excalibur,* 326 S.C. 382, 483 S.E.2d 775 (Ct.App.1997) (certiorari denied April 24, 1998). As petitioner was entitled to post-judgment interest as a matter of law, the fact that her motion for reconsideration seeking such interest was untimely or that she failed to seek it in her previous pleadings is irrelevant.

A question then arises as to when the interest began to accrue and if it has continued to accrue during the pendency of the appeals. Fixed awards of money for equitable distribution shall accrue interest at the post-judgment rate from the date of the judgment. *Casey v. Casey, supra.* Rule 58(a), SCRCP, states that upon a decision by the lower court, the clerk shall prepare, sign, and enter the judgment without awaiting any direction by the court. It states further that a judgment is effective only when so set forth and entered in the

record. Rule 59(e), SCRCP, states that a motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the *entry of the judgment*. Accordingly, the date of judgment is not effected by the filing of a Rule 59(e) motion.

The problem in the case at hand, however, is that there were two judgments. The first judgment was rendered on September 21, 1995, and the second on January 4, 1996. We must determine from which judgment the interest runs and whether it has continued to run during the pendency of the appeals.

This Court has held that interest does not accrue during the pendency of an appeal when the appeal is made by the judgment creditor on the basis of a claim of inadequacy and the appeal is *unsuccessful*. *Barth v. Barth*, 293 S.C. 305, 360 S.E.2d 309 (1987); *Sears v. Fowler*, 293 S.C. 43, 358 S.E.2d 574 (1987). The Court has never ruled on whether interest accrues during the pendency of an appeal when the appeal is made by the judgment creditor on the basis of a claim of inadequacy and the appeal is successful.

Some jurisdictions have held that when both the judgment debtor and judgment creditor appeal, the judgment creditor is entitled to interest from the date of the judgment regardless of whether the judgment creditor's appeal is successful. Other jurisdictions allow interest to accrue despite an unsuccessful appeal if the judgment debtor's appeal was filed before that of the judgment creditor. Annotation, *Right to Interest, Pending Appeal, of Judgment Creditor Appealing Unsuccessfully on Ground of Inadequacy*, 15 A.L.R.3d 411 (1967); Annotation, *Running of Interest on Judgment Where Both Parties Appeal*, 11 A.L.R.4th 1099 (1982).

Still another line of cases holds that where a money award has been modified on appeal, whether upward or downward, and the only action necessary in the trial court is compliance with the mandate of the appellate court, the view has been taken that interest on the award as modified should run from the same date as if no appeal had been taken, that is, the date of entry of the judgment. Annotation, *Date From Which Interest on Judgment Starts Running, as Affected by Modification of Amount of Judgment on Appeal*, 4 A.L.R.3d 1221

(1965); 45 Am.Jur.2d *Interest and Usury* § 80 (1999); 47 C.J.S. *Interest and Usury* § 68 (1982).

The case before us is a perfect example of how complicated calculating post-judgment interest can become when a money judgment is modified at several different junctures before reaching finality and why a bright line rule for the accrual of interest needs to be established. While different jurisdictions have come up with creative and complicated methods of resolving the issue, it appears that the simplest way to resolve it is by adopting a rule that when a money judgment is finalized, whether in a lower court or in an appellate court, the interest on that amount, whether it has been modified upward or downward or remains the same, runs from the date of the original judgment. To the extent this new rule is inconsistent with prior case law, that case law is overruled.

We therefore reverse the Court of Appeals' finding that petitioner is not entitled to post-judgment interest because it was not pled and because the Rule 59 motion in which petitioner requested such relief was untimely. We further hold that petitioner is entitled to post-judgment interest on the final amount determined by the Court of Appeals dating from the entry of the first judgment in the family court.

### 3.

■ Respondent owned a vacation home at Beech Mountain in North Carolina prior to his marriage to petitioner. Petitioner sought to be awarded a portion of the market appreciation in the home during the marriage.

The family court found that petitioner was seeking a special equity in the home. The court found the vacation home had previously been valued at $74,558 on January 19, 1988, during previous litigation, and that it had appreciated in value by about 2% per year due to inflation, giving it a value of approximately $77,570.00 as of the date of the marriage. Using the same annual inflationary rate, the court found the fair market value of the property on the date of filing was $84,000. Petitioner's expert testified that the fair market value of the property on the date of filing was $86,000. Accordingly, the family court found that only $2,000 of the increase could be attributed to any factors other than infla-

tion.[5]  However, based on the fact that petitioner did nothing to improve the property, spent little time there with respondent after the marriage, and there was no evidence that respondent spent significant marital funds on improvements to the property, the family court concluded petitioner had no interest in the property.

Petitioner argued in her motion to alter or amend that the family court misinterpreted her claim in the home as one based on special equity when she claimed the home had been transmuted into marital property due to its exclusive dedication to marital use and the large amounts of marital funds expended on its use, maintenance and improvement.  Petitioner argued that as a result of the transmutation, she was entitled to have the market appreciation of the house included in the marital estate.  The family court did not amend its ruling.

Petitioner argued once again on appeal that the home was transmuted as a result of its exclusive dedication to marital use, the time the family spent there, and the substantial amount of marital earnings expended on it;  therefore, market appreciation of the home should have been included in the marital estate.  The Court of Appeals, citing former Rule 207(b)(1)(B), SCACR, found that while petitioner argued the vacation home was transmuted to marital property, she only asked that the market appreciation of the home be included in the marital estate;  therefore she had limited the issue on appeal.[6]

Petitioner now argues "Rule 207(b)(1)(B) does not operate to waive the issue of transmutation fully preserved in the record when the party limits the request for relief."  We agree that the Court of Appeals erred in citing former Rule 207(b)(1)(B), but agree that by requesting only a portion of the

---

5.  Petitioner argued on appeal that the family court erred in its valuation of the market appreciation of the vacation home;  however, the Court of Appeals did not rule on the issue.  Petitioner did not raise that issue in her petition for a writ of certiorari.

6.  Rule 207, SCACR, has been renumbered as Rule 208, SCACR.  The language of the rule remains the same.

appreciation of the vacation home petitioner limited her claim to one of special equity, not transmutation.

Former Rule 207(b)(1)(B) stated:

**Statement of Issues on Appeal.** A statement of each of the issues presented for review. The statement shall be concise and direct as to each issue, and may be stated in question form. Broad general statements may be disregarded by the appellate court. *Ordinarily,* no point will be considered which is not set forth in the statement of the issues on appeal.

(Emphasis added).

The statement of issue on appeal was worded as follows: "Did the trial judge err in excluding market appreciation during coverture (of the second marital home) from the marital estate?" However, the argument on the issue contained discussion and citations to authority on transmutation. Given this fact, petitioner did not limit the issue on appeal by failing to refer to the term "transmutation" in her statement of the issue on appeal.

However, petitioner did limit the issue on appeal by the relief she sought. In certain circumstances, nonmarital property may be transmuted into marital property if it (1) becomes so commingled with marital property as to be untraceable; (2) is titled jointly; or (3) is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Peterkin v. Peterkin,* 293 S.C. 311, 360 S.E.2d 311 (1987). When property is determined to have been transmuted, the entire property, not just a portion of the property, is included in the parties' marital property which is thereafter apportioned by the family court using the criteria set forth in S.C.Code Ann. § 20–7–472 (Supp.1999).

On the other hand, S.C.Code Ann. § 20–7–473(5) (Supp. 1999) provides for a special equity in any increase in the value of nonmarital property during the marriage to the extent the increase resulted directly or indirectly from efforts of the other spouse during marriage. This is the relief petitioner sought.

A family court cannot award relief beyond the scope of the pleadings. *Coble v. Coble*, 293 S.C. 434, 361 S.E.2d 339 (1987). Since the relief sought by petitioner was that of a special equity, neither the family court nor the Court of Appeals erred in refusing to grant her relief pursuant to the doctrine of transmutation. *Allen v. Allen*, 287 S.C. 501, 339 S.E.2d 872 (Ct.App.1986).

## CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is **AFFIRMED IN PART** and **REVERSED IN PART**.

MOORE, WALLER, BURNETT, JJ., and Acting Associate Justice DIANE SCHAFER GOODSTEIN, concur.