Wife entered the marriage with a house

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Julius B. Reeves,       
Appellant,
 
 
 

v.

 
 
 
Joan M. Reeves,       
Respondent.
 
 
 

Appeal From Lexington County
Richard W. Chewning, III, Family Court 
 Judge

Unpublished Opinion No. 2003-UP-337
Submitted March 10, 2003  Filed May 
 15, 2003

REVERSED and REMANDED

 
 
 
Lori D. Hall, of West Columbia, for Appellant.
F. Glenn Smith, of Columbia, 
 for Respondent.
 
 
 

 PER CURIAM: 
 In this domestic action, Julius B. Reeves (Husband) appeals the family courts 
 order granting him a limited equitable interest in the marital residence and 
 awarding his wife, Joan M. Reeves (Wife), $5,000 in attorneys fees.  We reverse 
 and remand.
FACTS
After twenty-one years of marriage, 
 Husband and Wife separated in July of 2000.  Wife entered the marriage with 
 a minor son from a previous marriage.  During the marriage, one child was born.  
 Both of these children were emancipated at the time of the parties separation. 

Throughout most of the marriage, Husband worked 
 outside the home as the primary wage-earner.  At the time of trial, Husband 
 was sixty-two years old.  He was employed at the South Carolina Department of 
 Transportation, and earned a gross monthly income of $3,041.00.  At the time 
 of trial, Husband did not suffer from any serious or debilitating medical problems.  

Wife was forty-eight years old 
 at the time of trial.  She is a high school graduate.  With Husbands approval, 
 Wife worked mainly as a homemaker during much of the marriage.  She began working 
 outside the home on a regular basis approximately five years before the parties 
 separated.  Her work experience has been limited to secretarial positions.  
 At the time of trial, she was employed as a legal secretary and earned a gross 
 monthly income of $2,568.00. 
It is undisputed that Wife suffers from a number 
 of medical ailments, including seizure disorder, miscognitive tissue disorder, 
 and recurrent bursitis.  She has also been diagnosed with possible Multiple 
 Sclerosis, severe depression, anxiety disorder, chronic insomnia, chronic ulcerative 
 dermatitis, chronic diffuse pain syndrome, and severe iron deficiency. 
During the marriage, Wife received Social Security 
 payments for the benefit of her son from a previous marriage, who was entitled 
 to the benefits due to his fathers death.  The payments averaged $900.00 per 
 month for 146 months, totaling $131,400.00.  The checks were made payable to 
 Wife, but Husband admittedly forged her signature and cashed them without her 
 knowledge or approval. 
During the marriage, Wife borrowed funds to purchase 
 a car for the parties son.  Husband later sold the vehicle and spent the proceeds 
 but did not satisfy the $1,267.34 balance due on the car loan.  
The controversy on appeal centers on the 
 residence owned by Wife prior to the marriage.  The house was valued at $30,000.00 
 at the time of the marriage and was encumbered by a first mortgage.  In 1983 
 or 1984, Wife conveyed the house to Husband so that he could obtain a credit 
 rating sufficient to allow the parties to jointly purchase another home.  However, 
 this never occurred, and according to Wife, Husband subsequently refused to 
 transfer the house back to her.
During the marriage, Husband placed a second mortgage 
 on the house to pay the college expenses of the parties son.  Prior to the 
 separation of the parties, Wife paid off this second mortgage to avoid foreclosure 
 of the property.  At the time marital litigation was commenced, the house was 
 valued at $63,000.00 and was subject to a first mortgage of $8,619.00.
Husband filed this action in August of 2000.  By final 
 order dated May 8, 2001, the family court reserved Wifes right to claim alimony 
 and split the parties personal property approximately 50/50.  As to the residence, 
 the court ordered Husband to convey it to Wife by general warranty deed, free 
 and clear of all liens except the original mortgage.  The court found the home 
 had an appraised value of $63,000.00 and was subject to an $8,619.00 outstanding 
 first mortgage balance.  The court determined the net equity in the house was 
 $18,352.00.  This amount represented the value of the home at the time of trial, 
 less the premarital value of the home, the outstanding balance of the first 
 mortgage, and the amount Wife had paid to satisfy the second mortgage.  The 
 court awarded Husband a one-half interest in this adjusted net equity, equaling 
 $9,176.00.  The family court also ordered Husband to contribute $5,000.00 toward 
 Wifes attorneys fees and costs.  Husband appeals the disposition of the residence 
 and the award of attorneys fees.
STANDARD OF REVIEW
An appellate court reviewing 
 a family court order has the authority to correct errors of law and may find 
 facts in accordance with its own view of the preponderance of the evidence. 
 See Sharps v. Sharps, 342 S.C. 71, 79, 535 S.E.2d 913, 917 (2000) 
 (holding an appellate court may find facts in accordance with its view of the 
 preponderance of the evidence); McCuen v. McCuen, 348 S.C. 179, 181-82, 
 558 S.E.2d 926, 928 (Ct. App. 2002) (holding this Court has the authority to 
 correct errors of law and find facts in accordance with its own view of the 
 preponderance of the evidence); see also S.C. Code Ann. § 14-3-320 (Supp. 
 1983) (stating the Supreme Courts scope of review in equity cases is to review 
 the findings of fact as well as the law); S.C. Code Ann. § 14-8-200(a) (Supp. 
 1999) (stating this Court shall apply the same scope of review that the Supreme 
 Court would apply in a similar case). 
LAW/ANALYSIS 
Husband argues the residence should have been 
 declared marital property and the full equity divided equally between the parties.  

I. Division of the Marital Home
Before addressing equitable distribution, the family 
 court must first identify the marital property. Johnson v. Johnson, 296 
 S.C. 289, 293, 372 S.E.2d 107, 110 (Ct. App. 1988) (holding the first step for 
 the family court to take in making an equitable distribution is to identify 
 the marital property, both real and personal, to be divided between the parties); 
 see also S.C. Code Ann. § 20-7-473 (Supp. 1986) (stating the family court 
 has no jurisdiction as to the division of nonmarital property); S.C. Code Ann. 
 § 20-7-420(2) (Supp. 2002) (stating the family court has jurisdiction to divide 
 marital property); S.C. Code Ann. § 20-7-473(5) (Supp. 1986) (stating the increase 
 in the value of nonmarital property during the marriage, to the extent that 
 the increase resulted directly or indirectly from efforts of the other spouse 
 during marriage, is marital property); Calhoun v. Calhoun, 339 S.C. 
 96, 106, 529 S.E.2d 14, 20 (2000) (holding nonmarital property may be transmuted 
 into marital property if it is utilized by the parties in a manner that indicates 
 an intent by the parties to make it marital property).  In this case the final 
 order does not address this issue, and we are unable to properly review the 
 distribution for this reason.
The final order of the family court does not explain 
 whether the house was considered marital property, with the disparate division 
 based upon Husbands financial misconduct, or nonmarital property in which Husband 
 held a special equity. 
The court seems to have treated Husbands interest 
 as a special equity by the manner in which it calculated the distribution because 
 the court deducted the pre-marital value of the home, the first mortgage balance, 
 and the second mortgage payout from the current value of the home, dividing 
 the remaining equity between the parties. See S.C. Code Ann. § 20-7-473(5) 
 (Supp. 1986) (providing for a special equity in any increase in the value of 
 nonmarital property to the extent that the increase resulted directly or indirectly 
 from efforts of the other spouse during marriage); Murray v. Murray, 
 312 S.C. 154, 159, 439 S.E.2d 312, 316 (Ct. App. 1993) (A spouse has an equitable 
 interest in appreciation of property to which she contributed during the marriage, 
 even if the property is nonmarital.).
However, under the facts of this case, the family court 
 could have alternatively considered the property transmuted.
Nonmarital property may be transmuted into marital 
 property if it is utilized by the parties in a manner that indicates an intent 
 by the parties to make it marital property. Calhoun, 339 S.C. at 106, 
 529 S.E.2d at 20.  Transferring the title of property from one spouse to the 
 other spouse is generally considered evidence of transmutation of property. 
 Johnson, 296 S.C. at 295, 372 S.E.2d at 110-11; see also S.C. 
 Code Ann. § 20-7-473 (Supp. 1986) (Interspousal gifts of property, including 
 gifts of property from one spouse to the other . . . , are marital property 
 which is subject to division.).  
During the marriage, Wife conveyed the house to Husband.  
 Although she states she did not really understand what she was signing, she 
 undeniably conveyed the property to Husband in an effort to improve his credit.  
 Wife claims Husband defrauded her by devising the plan shortly after she received 
 shock therapy and by convincing her to transfer the house to him without ever 
 intending to buy another house.  However, Wife acknowledged she understood the 
 nature of the plan and intended to hold out to third parties, presumably financial 
 institutions, that the property was owned by Husband.  Thus, at least as to 
 third parties, she intended to convey ownership to Husband.
Because the family court did not declare whether the 
 residence was marital property and failed to adequately support its treatment 
 of the residence, we are unable to discern the reasons for the courts division 
 of the residence.  We are reluctant to review the award because the issues may 
 turn to some degree on credibility, a matter best left to the family court.  
 If the family court intended to limit Husband to a special equity, we must review 
 this determination in light of the conveyance to Husband and the circumstances 
 surrounding it.  On the other hand, if the court considered the house transmuted, 
 but adjusted the award to reflect the courts view of Husbands financial misconduct, 
 we must consider different issues on appeal.  In this regard, we note the family 
 court found that Husband forged Wifes name to checks totaling $131,400.00, 
 and utilized the checks.  It is unclear from this language whether the court 
 believed Husbands testimony that he spent the money in support of the marriage 
 or decided he misappropriated the funds for his own use.
Because we conclude the family court erred in dividing 
 the residence without first finding the property to be marital or nonmarital, 
 we reverse the division of the residence and remand the issue to the family 
 court.  On remand, the family court should decide whether the residence was 
 transmuted, and if so, apportion this asset in accordance with South Carolina 
 Code Annotated section 20-7-472.  See S.C. Code Ann. § 20-7-472 (Supp. 
 1986) (detailing fifteen factors for the family court to consider in making 
 an equitable distribution of marital property); Calhoun, 339 S.C. at 
 106, 529 S.E.2d at 20 (When property is determined to have been transmuted, 
 the entire property, not just a portion of the property, is included in the 
 parties marital property which is thereafter apportioned by the family court 
 using the criteria set forth in S.C. Code Ann. § 20-7-472.).  The court should 
 set forth its findings of fact and legal conclusions in support of its final 
 determination.
II. Award of Attorneys Fees
Husband next argues Wife should not have been awarded 
 attorneys fees.  In view of our disposition of the first issue, we remand this 
 issue for further determination by the family court. See Donahue v. 
 Donahue, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989) (holding one of the 
 factors for the family court to consider in making an award of attorneys fees 
 is the beneficial result obtained); see also S.C. Code Ann. § 20-3-130(H) 
 (Supp. 1990) (stating in divorce proceedings, the court, . . . after considering 
 the financial resources and marital fault of both parties, may order one party 
 to pay a reasonable amount to the other for attorney fees).
CONCLUSION
For the foregoing reasons, 
 the family courts decision is
 REVERSED and REMANDED. 
 [1] 
CURETON, STILWELL, and HOWARD, JJ., concur.

 
 
 [1] Because oral argument would not aid the Court in resolving any issue 
 on appeal, we decide this case without oral argument pursuant to Rule 215, 
 SCACR.