THIS OPINION HAS NO PRECEDENTIAL VALUE.  
 IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS 
 PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 Amber E. Moring, Respondent,
 
 
 

v.
 
 
 
 
 James R. Moring, Appellant.
 
 
 

Appeal From Charleston County
  Frances P. Segars-Andrews, Family Court Judge

Unpublished Opinion No.  2004-UP-605
 Heard November 10, 2004  Filed December 3, 2004

AFFIRMED IN PART, REVERSED IN PART 
 AND REMANDED

 
 
 
 
 Stephan Victor Futeral, of Mt. Pleasant, for Appellant.
 Susan Trout Kinard, of Mt. Pleasant, for Respondent.
 
 
 

PER CURIAM:  In this divorce action, Husband appeals from an order of 
 the family court asserting the family court erred in (1) apportioning marital 
 debt, (2) finding certain property to be transmuted into marital property, (3) 
 determining child care costs for child support purposes, (4) requiring Husband 
 to pay a percentage of private school tuition, (5) requiring Husband to attend 
 anger management, (6) determining Wifes income in previous and more recent 
 years, (7) determining Husbands income, (8) ordering Husband to return an engagement 
 ring to Wife, (9) awarding Wife $28,000 in attorneys fees, and (10) dismissing 
 Husbands Rule to Show Cause . We affirm in part, and reverse in part and remand.
FACTUAL/PROCEDURAL BACKGROUND
Husband and Wife were married on May 11, 1996 and have two daughters, Alex 
 who was four and Mimi who was fifteen months at the time of the final hearing.  
 They separated in March, 2000, while Wife was pregnant with Mimi.   On March 
 15, 2000, Wife filed this action seeking, among other things, a divorce on the 
 ground of physical cruelty, custody, child and spousal support, possession of 
 the marital home, equitable division of marital assets and debts, and attorneys 
 fees.  Husband answered, denying the material allegations, and counterclaimed 
 seeking custody and attorneys fees.  
Following an October 25, 2001 hearing in a bifurcated trial, the family court 
 granted Wife a divorce on the ground of one year continuous separation, and 
 incorporated the parties agreement giving Wife custody and providing a partial 
 agreement regarding Husbands visitation, with the final agreement to be determined 
 when the hearing reconvened.  The Court reconvened on January 10 and 14, 2002, 
 and thereafter issued its order (1) requiring Husband to pay the parties marital 
 debt of $9,500 on the Providian credit card debt, (2) finding the Husbands 
 condominium had been transmuted into marital property and awarding Husband possession 
 of the home but finding Wife was entitled to fifty percent equity in the home, 
 (3) finding the engagement ring non-marital and awarding Wife ownership and 
 possession of it, (4) further setting forth Husbands visitation, (5) determining 
 retroactive child support and ongoing child support based on previous and current 
 incomes of the parties, (6) finding the expenses of a nanny to be reasonable 
 child care expenses for child support determinations, (7) ordering Husband to 
 pay fifty percent of the cost of private school tuition for the children, and 
 (8) ordering Husband to pay $28,000 toward Wifes attorneys fees and costs.  

STANDARD OF REVIEW
In appeals from the family court, this court has the authority to find the 
 facts in accordance with its own view of preponderance of the evidence.  Rutherford 
 v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992).  This broad 
 scope of review does not, however, require this court to disregard the findings 
 of the family court.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 
 S.E.2d 616, 617 (1981).  Neither are we required to ignore the fact that the 
 trial judge, who saw and heard the witnesses, was in a better position to evaluate 
 their credibility and assign comparative weight to their testimony.  Cherry 
 v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).
LAW/ANALYSIS
I. Providian Debt
Husband first contends the family court erred in failing to determine the final 
 amount he must pay on the Providian bank card debt.  He contends, at the temporary 
 hearing, Wife represented there was a $9,500 balance owed to Providian, he was 
 ordered to pay $300 per month toward marital debt, and the court failed, in 
 the final order, to give him credit for $7,200 he had paid toward the debt.  
 He asks this court to find the balance owed by him on the debt to be $2,300.  

The record shows, following a temporary hearing on April 12, 2000, Husband 
 was ordered to pay $300 toward debts listed on Wifes financial declaration.  
 This amount apparently was not limited to just the Providian debt, and the order 
 did not specifically mention a Providian debt.  Other than Wifes January 2002 
 financial declaration submitted at the final hearing, the only other evidence 
 showing the Providian debt is an unsigned, undated financial declaration of 
 the Wife during the time of her previous employment, which indicates a Providian 
 debt balance of $9,500.  Because this document is not signed or dated, it is 
 impossible to determine whether the Providian debt was $9,500 at the time of 
 the temporary hearing.  At any rate, this document shows debt from at least 
 four other major credit cards with a total balance of $35,900, not including 
 the Providian balance.  By the time of the final hearing, Wifes financial declaration 
 showed a Providian debt balance of $9,500, but listed only two other major credit 
 card debts totaling a little over $17,000.  Wife testified at the final hearing 
 that the only marital credit card debt left was the Providian debt.  Thus, even 
 if we were to consider this unsigned, undated document as evidence, it shows 
 Wife paid down a substantial portion of the credit card debt.  Because none 
 of the proceedings from the temporary hearing are included within the record, 
 it is impossible to determine which of these various debts were purported to 
 be marital at the time of the temporary hearing.  See Wint v. Wint, 
 310 S.C. 48, 50, 425 S.E.2d 48, 50 (Ct. App. 1992) (the burden is on the appellant 
 to furnish a sufficient record on appeal from which this court can make an intelligent 
 review).  In the final order, the family court held it was uncontroverted that 
 the Providian debt of $9,500 was marital and Wife had been maintaining that 
 debt, together with the $300 contribution from [Husband] ordered after the 
 temporary hearing.  Given the record before us, based on our review of the totality 
 of the facts, we find a preponderance of the evidence supports the family courts 
 determination that Husband should be responsible for the remaining debt owed 
 on the Providian card.
II. Transmutation of the Condominium
Husband next contends the family court erred in finding his condominium had 
 been transmuted into marital property because Wife only sought a special equity 
 in the property, and therefore the family court should not have granted Wife 
 relief pursuant to the doctrine of transmutation.  We disagree.  
During Wifes examination of Husband at trial, Husband testified he bought 
 the condominium in 1984 and he had made every mortgage payment on it except 
 for one that Wife made from money he had given her.  Counsel for Husband sought 
 clarification during this line of questioning stating: 

 It has always been their position that the condo is non-marital and they 
 were not wanting to try to show transmutation.  They may be just showing this 
 for a different purpose, but I want to be clear because it will affect my 
 questions.  And I dont know if they have reversed that position now or not.  
 

Wifes counsel responded as follows: 

 Were not interested in possession.  We have always put forth a claim as 
 a special equity in the condo for the wifes contribution.  There has been 
 a lot of discovery going back and forth about proof of contribution during 
 the marriage.  And there would be no other reason for those questions and 
 the resulting responses unless thats what we were doing.  And the pleadings 
 - -

At this point, the court cut counsel off and this line of questioning continued.  
 Later on during the hearing, when objecting to the relevance of certain questions 
 by Husbands attorney, Wifes attorney stated, We are seeking a share of the 
 marital home.  
Thereafter, Wife testified that for two years of the marriage, Husband made 
 little to no income while he was starting up a new business.  During this time, 
 Husband had no other source of income.  Wife testified she made at least three 
 payments herself to the mortgage company during this time.  She also stated 
 that Husband managed to pay the mortgage and other bills from money Wife gave 
 to him.  Wife claimed she used her pre-marital nest egg money of $45,000 and 
 incurred $40,000 in debt to pay the bills during this time.  She further testified 
 she believed she had earned an interest in that condominium and she was entitled 
 to share in this home [because she] supported [Husband] during the marriage.  
 The parties tax returns showed Husband earned business income of $4,934 in 
 1997 and sustained a net loss of $8,883 in 1998.  
Husband cites Calhoun v. Calhoun, 339 S.C. 96, 529 S.E.2d 14 (2000) 
 in support of his argument that the family court should not have awarded Wife 
 relief pursuant to the doctrine of transmutation.  Husband quotes as follows 
 from Calhoun:  Since the relief sought by petitioner was that of a special 
 equity, neither the family court nor the Court of Appeals erred in refusing 
 to grant her relief pursuant to the doctrine of transmutation.  Id. 
 at 107, 529 S.E.2d at 20.  However, in Calhoun, the court found that 
 petitioner limited the issue on appeal by the relief she sought when she only 
 asked that the market appreciation of the home be included in the marital estate.  
 The court held [a] family court cannot award relief beyond the scope of the 
 pleadings.  Id. at 107, 529 S.E.2d at 20.  Because the petitioner in 
 Calhoun had only sought a special equity, the family court properly declined 
 to afford her relief pursuant to the doctrine of transmutation.
Although Wifes counsel did state Wife was seeking a special equity in the 
 condominium, she also indicated her client was seeking a share of the marital 
 home.  Further, Wife originally sought possession of the marital home in 
 her complaint, as well as equitable distribution of marital assets.  At the 
 time Wifes counsel used the term special equity, counsel specifically clarified 
 that they were no longer seeking possession of the home, and began to 
 argue Wifes allegations in her pleadings, but was cut off by the court.  We 
 decline to find an inadvertent misstatement by Wifes attorney should preclude 
 Wife from pursuing the relief properly requested in her pleadings.
III.  Child Care Costs
Husband next argues the family court erred in allowing $330 per week for child 
 care costs because the actual cost was only $300, a portion of the cost was 
 attributable to house cleaning, and the evidence showed reasonable day care 
 costs were between $173 and $228 per week.  We disagree.
The record shows that both of the parties children suffer from rather severe 
 asthma and allergy problems.  Husband admitted that when Alex was young, it 
 was not recommended that she attend day care because her allergies were so 
 bad.  Wife testified she had a nanny to watch the children and that she did 
 not enroll the girls in day care because of their health conditions.  Wife stated 
 she paid the nanny $300 a week plus $30 for gasoline expenses for a total of 
 $330 a week.  Husband agreed to employment of the nanny, but merely objected 
 to Wife getting full credit for the amount paid to the nanny because he believed 
 the nanny also cleaned the house.  Wife admitted the nanny did clean on occasion, 
 but testified Wife did most of the cleaning, the vacuuming performed by the 
 nanny was necessary for two asthmatic children, and because the nanny had one 
 or both children with her the entire day, there was little time for her to clean.  
 Child support awards are addressed to the sound discretion of the family court 
 and will not be disturbed on appeal absent an abuse of discretion.  Patel 
 v. Patel, 359 S.C. 515, 531, 599 S.E.2d 114, 122 (2004).  The child care 
 arrangement is the same as it was before the parties separated, and it contemplates 
 the special health needs of the children.  Based on the record before us, we 
 find a preponderance of the evidence supports the family courts determination 
 on this issue.
IV.  Private School Tuition    
Husband next asserts the family court erred in requiring him to pay fifty percent 
 of the cost of private school tuition for the children.  He argues Wife failed 
 to specifically request this relief.  He further asserts there was no agreement 
 by the parties to send the children to private school and there were no special 
 circumstances warranting the cost of private school.  We agree.   
The only evidence of record concerning private school for the children is that, 
 at the time of trial, Alex was enrolled in First Scotts Kindergarten K-4 program.  
 Wife testified she believed the tuition for the school is $2,400 a year.  She 
 further stated Alex was attending First Scotts at the time the parties separated 
 and she intended to send Mimi there as well.  Despite the fact that no mention 
 was made of Husband sharing in these costs, the family court ordered Husband 
 to be responsible for fifty percent of the cost of private school tuition for 
 the children, finding [t]he parties had established a course of conduct during 
 their marriage of having [Alex] enrolled in private kindergarten. . . .   
It is clear Wife never requested Husband be required to contribute to private 
 school tuition in her complaint.  Neither is there any indication that the issue 
 of her entitlement to a contribution for private school tuition was raised at 
 the hearing such that the issue was tried by consent.  See Shirley 
 v. Shirley, 342 S.C. 324, 340-341, 536 S.E.2d 427, 435 (Ct. App. 2000) (noting 
 when issues not raised in the pleadings are tried by express or implied consent, 
 they will be treated as if they had been raised in the pleadings).  Husband 
 was not, as Wife asserts, placed on notice Wife was seeking private school costs 
 for the children merely because Husband knew Alex was attending a private pre-school 
 program.  Due process requires that a litigant be placed on notice of the issues 
 which the court is to consider and the rule that family court pleadings are 
 to be liberally construed may not be stretched so as to permit the judge to 
 award relief not contemplated by the pleadings.  Abbott v. Gore, 304 
 S.C. 116, 119, 403 S.E.2d 154, 156 (Ct. App. 1991).  Accordingly, we find the 
 family court erred in ordering Husband to contribute to the childrens private 
 school tuition.
V.  Anger Management
Husband argues the family court erred in ruling he was required to attend anger 
 management because there is insufficient evidence to show he has a problem with 
 anger.  We disagree.
Wife initiated this action seeking a divorce on the grounds of physical cruelty.  
 At the commencement of the hearing, Wife moved to amend her complaint to seek 
 a divorce on the ground of one-year continuous separation and the motion was 
 granted without objection.  However, Wife still testified to incidences where 
 Husband became verbally and physically abusive with her, at times in front of 
 their daughter.  Wife also admitted she had thrown drinks and soup at Husband 
 and had thrown some of Husbands artwork off the balcony.  The guardian ad litem 
 testified to an incident she witnessed when she escorted Wife to retrieve some 
 personal property from the marital home and Husbands anger escalated during 
 the visit.  After the incident, the guardian indicated to Wifes attorney she 
 believed Husband needed anger management counseling.  The guardian testified, 
 while she thought Husband was a nice person, he directed anger at Wife, and 
 she believed Husband needed anger management to deal with it.  The family court 
 ordered both Husband and Wife to enroll in anger management courses.  Based 
 on the facts before us, we defer to the family court judge who saw and heard 
 the witnesses, and we find a preponderance of the evidence supports the courts 
 determination that Husband should attend an anger management course.
VI.  Wifes Income
Husband next asserts error in the family courts determination of Wifes income 
 for purposes of determining retroactive and ongoing child support.  Specifically, 
 he contends the court found Wifes gross monthly income in 2000 to be $2,947 
 when it was really $4,895 and further found her current gross monthly income 
 to be $3,410 when she actually earns gross monthly income of $6,712.  We disagree.
Wife testified she earned gross income of $35,366 in 2000.  While she had reported 
 a higher gross monthly figure on her financial declaration for the April 2000 
 temporary hearing, Wife testified she had not earned as much during the rest 
 of the year because she had gone on bed rest with her pregnancy, making much 
 less money during that year.  She further took a distribution from her IRA that 
 year in order to purchase her home, making her income appear higher.  Her 2000 
 tax return shows Wife earned wages of $35,366 and took an $18,500 distribution 
 from her IRA in the year 2000.  We find no error in the courts finding on Wifes 
 gross monthly income for the year 2000.  
As to the current income figure, Wifes financial declaration at the final 
 hearing showed she was earning $1,594 in salary, received income of $1,116 in 
 the form of a forgivable loan, and earned $700 from other sources per month.  
 Wife testified she was receiving average commissions of $1,594 a month, received 
 a forgivable loan from her new employment accounting for $1,116 per month, and 
 received $700 a month in property management fees.  Thus, the evidence supports 
 the courts finding that Wife had a gross monthly income of $3,410 at the time 
 of the final hearing.  Further, Husband fails to show any basis for his assertion 
 Wife earned $4,895 a month in addition to the property management income and 
 forgivable loan.  
VII.  Husbands Income
Husband next asserts 
 the family court erred in determining his income from self-employment, arguing 
 the court overstated gross receipts and failed to deduct a sufficient amount 
 for ordinary and necessary business expenses.  We find the evidence insufficient 
 to support the courts determination on the gross receipts of the business, 
 but find sufficient evidence on the issue of expenses.
South Carolina Regulation 114-4720, governing the determination 
 of child support, provides in pertinent part as follows:
 
 (1) Definition.  The guidelines define income as the actual gross income 
 of the parent, if employed to full capacity, or potential income if unemployed 
 or underemployed. . . .
 (2) Gross Income.  Gross income includes income from any source including 
 salaries, wages, commissions, royalties, bonuses, rents (less allowable business 
 expenses), dividends, severance pay, pensions, interest, trust income, annuities, 
 capital gains, social security benefits (but not Supplemental Security Income), 
 workers compensation benefits, unemployment insurance benefits, disability 
 insurance benefits, Veterans benefits and alimony, including alimony received 
 as a result of another marriage and alimony which a party receives as a result 
 of the current litigation.  Unreported case income should also be included 
 if it can be identified.
 *                    *                    *
 (4) Income From Self-Employment or Operation of a Business.  For income from 
 self-employment, proprietorship of a business, or ownership of a partnership 
 or closely held corporation, gross income is defined as gross receipts minus 
 ordinary and necessary expenses required for self-employment or business operation, 
 including employers share of FICA.  However, the court should exclude from 
 those expenses amounts allowed by the Internal Revenue Service for accelerated 
 depreciation or investment tax credits for purposes of the guidelines and 
 add those amounts back in to determine gross income.  In general, the court 
 should carefully review income and expenses from self-employment or operation 
 of a business to determine actual levels of gross income available to the 
 parent to satisfy a child support obligation.  As may be apparent, this 
 amount may differ from a determination of business income for tax purposes.

S.C. Reg. 114-4720(A) (emphasis added).
The family court order found Husband earned total commissions of $161,142 in 
 2000 and $153,506 in 2001.  Husbands accounting expert testified Husband earned 
 gross income of $64,933 in the year 2000 and $68,243 for the year 
 2001.  She determined these figures based on the companys general ledgers, 
 bank statements, and credit card statements.  Husband testified, and the business 
 tax return shows, Husbands company had gross receipts of $133,969 in 2000.  
 Wife, on the other hand, testified she suspected Husband was underestimating 
 his income and that he had, in the past, failed to report all of his income 
 on his tax return.  Further, Husband admitted that at one time, when he was 
 employed to handle the personal affairs of an elderly woman, he failed to report 
 all of that income on his income tax return.  While Wife contends she put into 
 evidence Plaintiffs Exhibit # 22, Husbands business bank statements through 
 the end of 2001 which purportedly show gross receipts for each of those years, 
 the record does not show this specific exhibit is included.  Further, the record 
 does contain statements from the various business bank accounts, however, these 
 statements are so disorganized and voluminous that it is impossible to determine 
 whether there is any support for the family courts finding on gross receipts 
 of the company.  While Wife may very well have provided evidence in support 
 of the figures used by the family court, this court is unable to verify the 
 figures through the record before us.  The family court was required to determine 
 gross receipts pursuant to S.C. Reg. 114-4720(A)(4).  Given the record before 
 us, we find it necessary to remand this issue to the family court for redetermination 
 of the value of Husbands gross receipts during the pertinent years.  If needed, 
 the family court may take additional testimony on the matter.  See Widman 
 v. Widman, 348 S.C. 97, 116, 557 S.E.2d 693, 703 (Ct. App. 2001) (wherein 
 this court remanded to the family court for a determination of the value of 
 a share of stock where evidence in the record was insufficient to enable appellate 
 court to make a determination, and allowed taking of additional testimony by 
 the family court to resolve the issue).
As to the deductible business expenses, the record supports the family courts 
 finding that Husband pays many of his personal living expenses out of his business 
 account and that he is not entitled to some of the expenses he claims.  The 
 record shows Wife successfully challenged many of these expenses.  Further, 
 we agree with the family court that Husband failed to produce credible evidence 
 on the commingled expenses, and we find he specifically failed to demonstrate 
 the evidence of record to support the expenses he now contends were wrongly 
 excluded.  Accordingly, we find the court properly excluded certain expenses 
 pursuant to S.C. Reg. 114-4720(A)(4).
VIII.  Engagement Ring
Husband next contends the family court erred in ordering him to transfer the 
 engagement ring in his possession to Wife because it was non-marital property.  
 We disagree.
At trial, Husband testified he gave the ring to Wife as an engagement ring.  
 He claimed he came into possession of the ring when Wife took the ring off 
 and said you can have the ring.  Wife adamantly denied giving the ring to 
 Husband.  She stated that, after their separation, she and Husband were arguing 
 over money and how much he had paid for the ring.  She took the ring off her 
 finger and asked Husband if that was all he cared about, at which point he took 
 the ring, smiled, and walked out the door.  
The family court found the ring was given to Wife prior to the marriage, it 
 was non-marital property, and Wife was to have permanent possession and ownership 
 of the ring.  Husband asserts this was error, contending the family court did 
 not have jurisdiction to apportion the non-marital property.  An antenuptial 
 gift of an engagement ring is the recipients separate property.  Frank 
 v. Frank, 311 S.C. 454, 457, 429 S.E.2d 823, 825 (Ct. App. 1993).  Husband 
 is correct in his assertion that the family court does not have jurisdiction 
 to apportion non-marital property.  S.C. Code Ann. § 20-7-473 (Supp. 2003).  
 However, family courts have exclusive jurisdiction to hear and determine actions 
 for divorce . . . and for settlement of all legal and equitable rights of the 
 parties in the actions in and to the real and personal property of the marriage 
 . . . . S.C. Code Ann. § 20-7-420(2) (Supp. 2003).  Thus, the family court 
 clearly has jurisdiction to determine what is and is not marital.  Here, the 
 court did not apportion the non-marital property, but merely determined it 
 was in fact non-marital and belonged to Wife. 
 [1]   Accordingly, we hold the family court properly determined Wife was 
 entitled to possession and ownership of the ring.  
IX.  Attorneys Fees
Husband contends the family court erred in awarding Wife $28,000 in attorneys 
 fees because (1) the court improperly found much of Wifes fees were caused 
 by Husbands frivolous claim for custody, (2) the fees included $3,600 from 
 services of an unnecessary second attorney and, (3) the court improperly awarded 
 fees in part based on Husbands purported obstructive behavior in refusing to 
 allow Wife to retrieve some of her personal effects.  We disagree.
The family court found Wife had incurred attorneys fees and cost of $41,513 
 and Husband should contribute $28,000 toward the fees and costs.  The record 
 before us is replete with evidence supporting the family courts determination 
 that Husbands claim to custody was frivolous in that he maintained the claim 
 for other purposes than obtaining custody of his children.  The preponderance 
 of evidence also supports the courts finding that Husband was obstructive in 
 that he refused to allow Wife to retrieve items that were clearly non-marital.  

As to Husbands assertion regarding a second attorney, the record shows Wifes 
 attorneys fees affidavit was admitted into evidence without objection.  The 
 record fails to demonstrate Husband ever challenged the use of two attorneys 
 or raised any objection to the fees during the hearing on his motion to reconsider.  
 Further, Husband failed to raise any issue concerning attorneys fees in his 
 motion for reconsideration.  As a general rule, an issue may not be raised for 
 the first time on appeal, but must have been raised to and ruled upon by the 
 court below to be preserved for appellate review.  See Noisette v. 
 Ismail, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding an issue not 
 preserved where the trial court did not explicitly rule on an argument and the 
 appellant failed to make a Rule 59(e), SCRCP motion to alter or amend the judgment 
 on that ground).  Because the family court did not have an opportunity to rule 
 on this issue, it is not preserved for our review.  
We find no error in the award of attorneys fees based on Husbands arguments 
 and therefore affirm the award of these fees to Wife. [2]   
X.  Dismissal of Husbands Rule to Show Cause   
Husband finally asserts the family court erred in denying his rule to show 
 cause.  He contends the evidence introduced at the hearing on the matter showed 
 Wife willfully failed to comply with the courts order on visitation.  We disagree.
Following issuance of the final order, Husband sought to have Wife held in 
 contempt based on her failure to comply with the courts order on visitation.  
 The family court dismissed the rule to show cause, finding, due to confusion 
 over the court ordered visitation, Wife initially failed to allow some of Husbands 
 weekday visitations on Tuesday and Thursday during the summer months.  However, 
 Wife thereafter offered substitute visitation to make up for the missed days, 
 and specifically offered Tuesday and Thursday visitation, but Husband refused, 
 indicating he would rather take the matter to the court to have Wife held in 
 contempt.  
Contempt results from the willful disobedience of a court order, and before 
 a court may find a person in contempt, the record must clearly and specifically 
 reflect the contemptuous conduct.  Widman v. Widman, 348 S.C. 97, 119, 
 557 S.E.2d 693, 705 (Ct. App. 2001).  A willful act is one which is done voluntarily 
 and intentionally with the specific intent to do something the law forbids, 
 or with the specific intent to fail to do something the law requires to be done; 
 that is to say, with bad purpose either to disobey or disregard the law.  
 Id. (citation omitted).  A determination of contempt is within the sound 
 discretion of the trial judge whose decision will not be disturbed unless the 
 judges finding is without evidentiary support or there is an abuse of discretion.  
 Id. at 120, 557 S.E.2d at 705.
The record shows there was much confusion over the visitation issue.  There 
 was only a partial agreement in the first part of the bifurcated trial.  Wife 
 testified she did not realize she was in violation of the order, and she thought 
 the order provided no extended visitation over the summer months.  She further 
 stated she tried to comply, offering Husband additional time with the children, 
 but Husband refused stating he wished to settle the matter in court.  Even Husband 
 admitted the final order did not encompass what he thought it was supposed to 
 reflect on visitation.   Accordingly, we find no abuse of discretion.
Based on the foregoing, the order below is
ARRIRMED IN PART, REVERSED IN PART AND REMANDED.   
HUFF, KITTREDGE, and BEATTY, JJ., concur.

 [1] Apportion means [t]o divide and distribute proportionally. 
 Blacks Law Dictionary 99 (6th ed.1990).    
 [2] Husband does not challenge the attorneys fee award on any other 
 basis.  Specifically, he does not argue against the award based on the appropriate 
 factors.  See Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 
 313, 315 (1991) (wherein court held, in determining the amount of attorneys 
 fees to award, the court should consider the nature, extent, and difficulty 
 of the case, the time necessarily devoted to the case, counsels professional 
 standing, the contingency of compensation, the beneficial results obtained, 
 and the customary legal fees for similar services).  Nor did he request this 
 court reverse and remand the issue based on our reversal of any other issues.  
 See Sexton v. Sexton, 310 S.C. 501, 427 S.E.2d 665 (1993) (reversing 
 and remanding issue of attorneys fees for reconsideration where husband argued 
 the substantive results achieved by trial counsel were reversed on appeal).  
 Accordingly, the award is affirmed based solely on the arguments submitted by 
 Husband.